2002 UT 28

**HOUSING AUTHORITY OF the COUNTY OF SALT LAKE, Plaintiff and Appellee,**

v.

**John Thomas SNYDER, Defendant and Appellant.**

**No. 20000591.**

Supreme Court of Utah.

March 8, 2002.

Kimberly D. Washburn, Salt Lake City, for plaintiff.

Brian M. Barnard, James L. Harris, Jr., Salt Lake City, for defendant.

DURRANT, Justice:

¶ 1 This appeal concerns a dispute between a tenant, John Thomas Snyder, and his landlord, the Housing Authority of the County of Salt Lake ("Housing Authority"). Snyder allegedly assaulted the manager of his apartment complex and thereafter received a notice from Housing Authority terminating his lease. When Snyder refused to vacate his apartment, Housing Authority filed an unlawful detainer action against him in district court. In response, Snyder argued that the district court lacked subject matter jurisdiction because federal law required an administrative grievance hearing. The district court rejected this argument and entered judgment in favor of Housing Authority. On appeal, Snyder renews his assertion that the district court lacked jurisdiction. We conclude that the district court lacked subject matter jurisdiction because Housing Authority failed to exhaust its administrative remedies and therefore reverse.

## BACKGROUND

¶ 2 Housing Authority is a local public housing agency ("PHA"), which leases apartments to low-income persons and is subsidized by the United States Department of Housing and Urban Development ("HUD"). On August 7, 1998, Snyder executed a residential lease agreement ("Lease Agreement") with Housing Authority for an apartment in Salt Lake City, Utah. This Lease Agreement included, among other things, the following terms and conditions:

[1. *Section 11(D):* Snyder] will comply with all terms of this lease [and] all rules and regulations posted by Housing Authority in its main office....

[2. *Section 11(H):* Snyder] will be held directly responsible for [his] action[s]

....

[3. *Section 11(I):* Snyder] will act in a manner so as not to disturb any neighbors peaceful enjoyment of his/her accommodations and refrain from all illegal or criminal activity on or near the Premises....

[4. *Section 17:* ] Housing Authority will evict [Snyder] for ... criminal activity that threatens the health, safety, or right to peaceful enjoyment by other residents; drug related criminal activity at or near the Premises; repeated failure to comply with any other Resident's obligation under the lease; or for other good cause.

Housing Authority will give [a three day] written notice [of termination] for ... criminal activity described in the proceeding [sic] paragraph.... The notice shall state the reasons for termination and inform [Snyder] of [his] right to a grievance hearing in accordance with HUD regulations if applicable.

Tenancy shall not terminate until the time for [Snyder] to request a grievance procedure has expired, if [Snyder] is entitled to a grievance hearing. If [Snyder] is

entitled to a grievance hearing and requests such in a timely fashion, tenancy shall not terminate until the grievance process is completed.

¶ 3 Approximately sixteen months after the formation of this Lease Agreement, Snyder met with Sherrie Rico, the manager of his apartment complex and an employee of Housing Authority, to discuss a fee he had incurred and a letter she had sent him.[1] According to Rico, Snyder stepped around her desk and "got in her face." She further claimed that he pointed his finger at her, berated her with intimidating language, called her vulgar names, and informed her "I'm going to get you on this." After making these alleged statements, Snyder exited Rico's office, and she filed a complaint against him with the Salt Lake City Police Department.

¶ 4 Housing Authority then served Snyder with a "3 Day Notice of Termination of Lease Agreement" on February 25, 2000. This notice highlighted the events of the February 23, 2000, meeting between Rico and Snyder and declared that Snyder had violated several provisions of his Lease Agreement. In particular, the 3–Day Notice claimed that Snyder had threatened the safety of a Housing Authority employee, Rico, and violated Sections 11(D), 11(H), and 11(I) of the lease. The notice further informed Snyder that he was not entitled to a grievance hearing under federal or state law, and ordered him to vacate his apartment by midnight on March 1, 2000.

¶ 5 Despite this notification, Snyder remained in possession of his apartment after the specified deadline. Housing Authority responded by filing an unlawful detainer action on March 6, 2000. *See* Utah Code Ann. §§ 78–36–1 to –12.6 (2000). Snyder answered Housing Authority's complaint seven days later, contending, inter alia, that he was entitled to an administrative grievance hearing.

¶ 6 On March 20, 2000, Snyder filed a Motion to Dismiss Housing Authority's unlawful detainer action. The district court denied this motion on March 27, 2000, be-

cause Snyder had not filed a notice to submit the motion for decision pursuant to rule 4–501 of the Utah Rules of Judicial Administration. *See* Utah R. Jud. Admin. 4–501(D). The court then scheduled Housing Authority's action against Snyder for trial.

¶ 7 The day the trial was set to begin, May 8, 2000, Snyder filed a motion for a continuance. The following day he filed a motion for summary judgment. Notwithstanding these two motions, the district court proceeded with the trial as scheduled and issued its opinion on June 13, 2000. The court's ruling declared that Snyder's pending motions would not be ruled upon because they were not submitted for decision prior to the date of trial; it also entered judgment in favor of Housing Authority and terminated Snyder's Lease Agreement.

¶ 8 In reaching this outcome, the district court made the following findings of fact and conclusions of law:

1. The Lease Agreement between Housing Authority and Snyder was valid.

2. Snyder breached Sections 11(I) and 17 of the Lease Agreement by engaging in "criminal activity" (i.e., an assault on Rico).

3. Snyder also breached Section 17 of the lease agreement because his assault on Rico constituted "other good cause."

4. Snyder's conduct justified terminating the Lease Agreement.

5. Housing Authority properly served a 3–Day Notice to Vacate upon Snyder.

6. Snyder remained in unlawful detainer of Housing Authority's apartment for sixty-eight days.

7. Snyder was liable for treble damages and had to vacate the apartment immediately.

¶ 9 Snyder appealed the district court's ruling, and we took jurisdiction pursuant to section 78–2–2 of the Utah Code. *See* Utah Code Ann. § 78–2–2(3)(j) (2000). On appeal, Snyder contends that the district court erroneously concluded that it had subject matter

---

1. This letter claimed Snyder had abused Housing Authority employees and other residents, and informed him he would be evicted if his conduct persisted.

jurisdiction.[2] Specifically, Snyder claims that the district court lacked subject matter jurisdiction because federal law mandated that a grievance hearing be held before his lease could be terminated. In response, Housing Authority asserts that Snyder failed to preserve his jurisdictional claim for appeal because none of his motions were submitted for decision as required by rule 4–501 of the Utah Rules of Judicial Administration. Alternatively, Housing Authority argues that the requested grievance hearing was not mandatory because Snyder's eviction was based on a threat to the health or safety of Rico, one of its employees, and it had expressly exempted evictions based on such conduct from the administrative grievance hearing requirement.

## ANALYSIS

### I. STANDARD OF REVIEW/STATUTORY INTERPRETATION

¶ 10 Determining whether the district court had subject matter jurisdiction over Housing Authority's unlawful detainer action presents a question of law, which we review for correctness. *See Beaver County v. Qwest, Inc.*, 2001 UT 81, ¶ 8, 31 P.3d 1147. Where this correctness review requires us to examine statutory language, we look to the plain meaning of the statute first and go no further unless it is ambiguous. *See State v. Ostler*, 2001 UT 68, ¶ 7, 31 P.3d 528.

### II. SUBJECT MATTER JURISDICTION

¶ 11 We note at the outset of our analysis that "parties must exhaust applicable administrative remedies as a prerequisite to seeking judicial review." *Nebeker v. Utah State Tax Comm'n*, 2001 UT 74, ¶ 14, 34 P.3d 180 (internal quotations omitted). Where this precondition to suit is not satisfied, courts lack subject matter jurisdiction. *Hom v. Utah Dep't of Pub. Safety*, 962 P.2d 95, 99 (Utah Ct.App.1998). We also note that questions regarding subject matter jurisdiction may be raised at any time because such issues determine whether a court has authority to address the merits of a particular case. *Thomas v. Lewis*, 2001 UT 49, ¶ 13, 26 P.3d 217. Further, because it is a threshold issue, we address jurisdictional questions before resolving other claims. *Id.* Whether Snyder adequately preserved his subject matter jurisdiction claim below is therefore irrelevant.

¶ 12 Having concluded that his jurisdictional claim is properly before us, we next examine the merits of Snyder's contention. He alleges that the district court lacked subject matter jurisdiction to decide Housing Authority's unlawful detainer action because federal law required an administrative grievance hearing. Refuting Snyder's assertion that the court lacked jurisdiction, Housing Authority claims that Snyder's conduct on February 23, 2000, constituted an assault on Rico and endangered the safety of one of its employees. Housing Authority further contends that it exempted grievances concerning evictions that involved a threat to the safety of one of its employees from the federal grievance hearing requirement. Accordingly, we are called upon to ascertain whether Housing Authority established such an exemption.

¶ 13 As mentioned previously, Housing Authority receives subsidies from the federal government. It is therefore required to adhere to federal regulations governing a PHA and must afford its tenants the right to request a grievance hearing before evicting them or terminating their tenancy. 42 U.S.C. § 1437d(k) (2000). In fact, "each PHA receiving assistance [must] establish and implement an administrative grievance procedure under which tenants will have an opportunity for a hearing before an impartial party [on adverse action proposed by the PHA.]" *Id.* § 1437d(k)(2).

---

**2.** Snyder alleges the court made additional errors, including the following: (1) it granted an expedited trial absent the posting of a possession bond, (2) it granted an expedited trial without allowing him an opportunity to conduct adequate discovery, (3) it concluded that he had engaged in an assault, (4) it concluded that the Lease Agreement permitted evictions based upon an assault against a Housing Authority employee, and (5) it found that the Lease Agreement complied with federal regulations. Because we find Snyder's jurisdictional argument dispositive, we do not address these contentions.

¶ 14 Despite this broad language, an administrative grievance hearing is not required for every eviction or tenancy termination sought by a PHA. *Id.* § 1437d(k). Subsection 1437d(k) of title 42 of the United States Code permits a PHA to waive the grievance hearing requirement in the following manner:

> For any grievance concerning an eviction or termination of tenancy that involves any criminal activity that threatens the health [or] safety . . . [of] employees of the [PHA] . . ., the agency may . . . exclude from its grievance procedure any such grievance, in any jurisdiction which requires that prior to eviction, a tenant be given a hearing in court which the Secretary [of HUD] determines provides the basic elements of due process. . . .

*Id.*

¶ 15 Employing comparable language, section 966.51 of title 24 of the United States Code of Federal Regulations similarly states that "[i]f HUD has issued a due process determination, a PHA may exclude from [its] administrative grievance procedure . . . any grievance concerning a termination or eviction that involves [a]ny criminal activity that threatens the health [or] safety . . . [of] employees of the PHA." 24 C.F.R. § 966.51(2)(i) (2000). Hence, according to the plain meaning of two federal statutes, a PHA can waive the administrative grievance hearing requirement mandated by federal law for grievances concerning any eviction or termination of tenancy that involves a threat to the health or safety of one of its employees if (1) HUD's Secretary finds that a state court proceeding affords basic due process protections to the affected tenant and (2) the PHA has properly excluded such grievances from the federal requirement.

¶ 16 Here, HUD's Secretary determined on December 3, 1991, that Utah's Unlawful Detainer Statute, Utah Code Ann. §§ 78–36–1 to –12.6 (2000), satisfied the basic elements of due process and declared that "a PHA operating public housing in the State of Utah [could] exclude from its grievance procedure any grievance concerning an eviction or termination of tenancy which involve[d] criminal activity that threaten[ed] the health [or] safe-

ty [of] employees of the PHA. . . ." Moreover, following HUD's due process determination, Housing Authority explicitly excluded such grievances from its own grievance hearing rules. Specifically, Section XIII(7) of Housing Authority's "Grievance Procedure" policy established the following:

> The provisions of [HA's] grievance procedure are not applicable to any grievance concerning an eviction or termination of tenancy based upon a tenant's creation or maintenance of the threat to the health or safety . . . [of] HA employees. The HA may immediately commence an eviction action in accordance with State Law based on . . . the grounds stated in this section.

[6] ¶ 17 Accordingly, Housing Authority clearly attempted to capitalize on the exemption permitted by federal law. Notwithstanding this attempt, however, Housing Authority did not properly create an exemption with respect to Snyder. Housing Authority failed to do so because federal law also requires a PHA to incorporate its grievance procedure rules into an individual tenant's lease agreement. 24 C.F.R. § 966.52(b) (2000); *see also* 24 C.F.R. § 966.4(*l*)(1) (declaring that "[t]he lease shall state the procedures to be followed by the PHA . . . to terminate the tenancy."). Indeed, federal law mandates that a "PHA['s] grievance procedure shall be included in, or incorporated by reference in, all tenant dwelling leases. . . ." 24 C.F.R. § 966.52(b) (2000); *see also* 24 C.F.R. § 966.4(*l*)(1). This requirement is imposed, in part, to ensure that a tenant is aware of his or her rights under the lease. *See generally,* 24 C.F.R. § 966.50 (2000). Snyder's Lease Agreement, however, did not include, or incorporate by reference, this required information. For that reason, we hold that Housing Authority did not adequately disclose its grievance procedure policies to Snyder and thus remained subject to the general rule requiring an administrative grievance hearing.

¶ 18 In reaching this conclusion, we first note that the term "grievance procedure" was used in two different sections of the

Lease Agreement;[3] we also note that Section 11(D) of the Lease Agreement declared that Snyder had to "comply with all rules and regulations posted by Housing Authority in its main office." These references are insufficient, however, to incorporate the entirety of Housing Authority's grievance procedure into Snyder's Lease Agreement. *Cf. Anderson v. Anderson*, 18 Utah 2d 89, 91–92, 416 P.2d 308 (Utah 1966) (concluding that where one statute merely cites another statute the entirety of that mentioned statute is not incorporated by reference).

¶ 19 Admittedly, parties may incorporate the terms of another document by reference into their contract. *Consolidated Realty Group v. Sizzling Platter, Inc.*, 930 P.2d 268, 273 (Utah Ct.App.1996). Yet, the terms of another document cannot be incorporated by reference without specific language. Rather, "the reference must be clear and unequivocal," and alert the non-drafting party that terms from another document are being incorporated. *Id.*

¶ 20 Given the degree of specificity required for incorporation by reference, the language included in Snyder's Lease Agreement did not incorporate either the entirety of Housing Authority's grievance procedure rules or its internally established exemption to the federally mandated grievance hearing requirement. To begin with, the Lease Agreement never informed Snyder that a grievance hearing was unavailable for grievances concerning any eviction or termination of tenancy that involved a threat to the health or safety of a Housing Authority employee. Instead, the Lease Agreement, at best, only partially incorporated Housing Authority's grievance procedure rules. Specifically, the Lease Agreement declared in section 3 that "[Snyder] ha[d] a right to request a hearing under Housing Authority grievance procedures [in two situations: where he disagreed with Housing Authority's (1) rent re-

valuation amount or (2) its decision to change his apartment location.]"

¶ 21 All other language in the Lease Agreement that referred to the grievance procedure process was either vague and ambiguous or directly suggested that the federal rule requiring a grievance hearing applied. Indeed, section 17 of Snyder's lease stated that a grievance procedure would be provided in "accordance with [federal] regulations" and then, without elaborating on that procedure, stated that Snyder's tenancy could not be terminated until he had been afforded the right to request a "grievance hearing," if applicable. In relevant part, section 17 of the lease, which is entitled "Lease Termination," declared the following:

> Housing Authority will give [a three day] written notice [of termination] for ... criminal activity described in the preceding [sic] paragraph.... The notice shall state the reasons for termination and inform [Snyder] of [his] right to a grievance hearing in accordance with HUD regulations if applicable.
>
> Tenancy shall not terminate until the time for [Snyder] to request a grievance procedure has expired, if [Snyder] is entitled to a grievance hearing. If [Snyder] is entitled to a grievance hearing and requests such in a timely fashion, tenancy shall not terminate until the grievance process is completed.

Thus, the language used in Snyder's Lease Agreement neither included, or incorporated by reference, the entirety of Housing Authority's grievance procedure rules nor its internally established exemption to the federally mandated grievance hearing requirement.

¶ 22 Because the exemption was not included in the Lease Agreement, the federal rule mandating a grievance procedure for adverse action proposed by a PHA remained in effect. Housing Authority therefore failed

---

**3.** Specifically, the Lease Agreement stated in Section 3 that "[i]f Housing Authority reevaluates rent amount or determines that [Snyder] must change Premises, [Snyder] may ask for an explanation of such determination; if [Snyder] disagrees, [Snyder] has the right to request a hearing under Housing Authority grievance procedures." In addition, the Lease Agreement de-

clared in Section 17 that "[t]enancy shall not terminate until the time for [Snyder] to request a grievance procedure has expired, if [Snyder] is entitled to a grievance hearing. If [Snyder] is entitled to a grievance hearing and requests such in a timely fashion, tenancy shall not terminate until the grievance process is completed."

to exhaust its administrative remedies and had no right to seek relief from the district court. *See Merrihew v. Salt Lake County Planning & Zoning Comm'n,* 659 P.2d 1065, 1067 (Utah 1983). As a result, the district court lacked subject matter jurisdiction over Housing Authority's unlawful detainer action. *See id.*

## CONCLUSION

¶ 23 We conclude that Housing Authority failed to exhaust its available administrative remedies and that the district court lacked subject matter jurisdiction over Housing Authority's unlawful detainer action. Accordingly, we vacate the ruling rendered by the district court and remand this case with the order that plaintiff's unlawful detainer action be dismissed.

¶ 24 Chief Justice HOWE, Associate Chief Justice RUSSON, Justice DURHAM, and Justice WILKINS concur in Justice DURRANT's opinion.