2003 UT App 91

Steven FISHER, Petitioner,

v.

Nanette FISHER, Respondent.

State of Utah, Office of Recovery Services, Appellant and Cross–Appellee,

v.

M. Dirk Eastmond, Appellee and Cross–Appellant.

No. 20010771–CA.

Court of Appeals of Utah.

March 27, 2003.

Karma K. Dixon, Assistant Attorney General, Salt Lake City, for Appellant.

M. Dirk Eastmond, Sandy, Appellee pro se.

Before Judges BENCH, GREENWOOD, and THORNE.

## OPINION

THORNE, Judge.

¶ 1 The State of Utah Office of Recovery Services (ORS) appeals from an order granting M. Dirk Eastmond an attorney lien against past-due child support payments collected by ORS on behalf of Eastmond's former client, Nanette Fisher (Wife). Eastmond cross appeals that portion of the trial court's order that prevents the lien from attaching to future child support payments. We reverse in part and dismiss in part.

## BACKGROUND

¶ 2 In August 1999, Wife retained Eastmond to represent her in a divorce action. Eastmond obtained a judgment for all past-due child support and an award of future child support payments. In December 1999, Wife opened a case with ORS seeking enforcement of this child support order. After ORS located Wife's ex-husband and garnished his wages, Eastmond filed a notice of attorney lien in the underlying divorce action seeking to attach the funds collected by ORS. ORS intervened in the underlying divorce action and filed a motion to quash the attorney lien.[1]

¶ 3 The court commissioner assigned to the case recommended that ORS's motion to quash be granted. Eastmond objected and the matter was scheduled for hearing. At the hearing, the district court rejected in part and accepted in part the commissioner's recommendation to quash Eastmond's lien. The court found that Eastmond could assert his lien against the past-due child support collected by ORS but not against future child support payments.[2]

¶ 4 At this hearing, Eastmond also entered an appearance on behalf of Wife. The court informed Eastmond that his interest was adverse to that of Wife, and told Eastmond that he could not represent her. Later in the hearing, Eastmond moved to withdraw as Wife's attorney.

¶ 5 After the court ruled, Eastmond questioned the court about the procedure for appealing the ruling, indicating that he was in "no position to appeal." Eastmond asked the court to separate the attorney lien from the underlying divorce action, but his request was denied. In its written order, the court allowed Eastmond to withdraw as Wife's attorney and allowed Eastmond "to continue as a Party-in-Interest in this matter for the purpose of any further proceeding on the issues relating to his attorney[ ] lien, including any appeal, and it is not necessary to bifurcate the proceeding or assign a miscellaneous case number, as counsel suggests."

¶ 6 Both ORS and Eastmond appeal.

---

1. ORS was allowed to intervene as an interested party because the State was providing, or had provided, public assistance to Wife's child and was entitled to reimbursement from Wife. *See* Utah Code Ann. §§ 62A–11–301 to –333 (2000); 62A–11–401 to –414 (2000); 78–45–9 (2001).

2. Initially, Eastmond filed a *Notice* of Attorney Lien, but when ORS opposed the lien, the trial court ruled on the enforceability of the lien. Accordingly, we review the propriety of the trial court's *enforcement* of Eastmond's attorney lien in the underlying divorce action.

## ISSUES AND STANDARD OF REVIEW

¶ 7 ORS argues that the trial court erred in allowing Eastmond to attach his attorney lien to funds collected by ORS. Eastmond cross appeals, arguing that the trial court erred in limiting his attorney lien to past-due child support payments. Both issues are resolved by reference to Utah statutes and this court's interpretation of those statutes. " 'Matters of statutory construction are questions of law that are reviewed for correctness.' " *In re D.B.*, 2002 UT App 314, ¶ 6, 57 P.3d 1102 (quoting *Platts v. Parents Helping Parents*, 947 P.2d 658, 661 (Utah 1997)).

## ANALYSIS

### I.  Past–Due Child Support

¶ 8 ORS argues the trial court erred in allowing Eastmond's attorney lien to attach to past-due child support payments. Resolution of this question requires that we examine the attorney lien statute, the statutes that created ORS, and the statutes that apply generally to governmental entities.

¶ 9 Eastmond filed his attorney lien pursuant to the attorney lien statute, Utah Code Ann. § 78–51–41 (2000), which provides:

> The compensation of an attorney and counselor for services is governed by agreement, express or implied, *which is not restrained by law.* From the commencement of an action, or the service of an answer containing a counterclaim or at the time that the attorney and client enter into a written or oral employment agreement, the attorney who is so employed has a lien upon the client's cause of action or counterclaim, which attaches to any settlement, verdict, report, decision, or judgment in the client's favor and to the proceeds thereof in whosoever hands they may come, and cannot be affected by any settlement between the parties before or after judgment. Any written employment agreement shall contain a statement that the attorney has a lien upon the client's cause of action or counterclaim.

Utah Code Ann. § 78–51–41 (2000)(emphasis added.) [3]

¶ 10 Utah Code Ann. § 62A–11–102 (2000) creates "within the Department [of Human Services] the Office of Recovery Services." Pursuant to Utah Code Ann. § 62A–11–104 (Supp.2002), this department has the power and duty

> (1) to provide child support services if:
>
> (a) the office has received an application for child support services;
>
> (b) the state has provided public assistance; or
>
> (c) a child lives out of the home in the protective custody, temporary custody, or custody or care of the state or another party for at least 30 days.
>
> . . . .
>
> (7) to implement income withholding for collection of child support in accordance with Part 4 of this chapter;
>
> . . . .
>
> (9) to establish and maintain the state case registry in the manner required by the Social Security Act, 42 U.S.C. [§ ] 654a. . . .

*Id.* Pursuant to Utah Code Ann. § 62A–11–106 (2000), ORS "may file judicial proceedings as a real party in interest to establish, modify, and enforce a support order in the *name of the state*, any department of the state, [ORS], or an obligee." (Emphasis added.) Finally, Utah Code Ann. § 63–30–22(2) (1997) provides that "[e]xecution, attachment, or garnishment may not issue against a governmental entity."

¶ 11 This court has long held that " '[w]hen interpreting statutes, our primary goal is to evince the "true intent and purpose of the Legislature." ' " *Lovendahl v. Jordan Sch. Dist.*, 2002 UT 130, ¶ 20, 63 P.3d 705 (citation and quotations omitted); *see also id.* at ¶ 21 ("When interpreting statutes, we determine the statute's meaning by first looking to the statute's plain language, and give effect to the plain language unless the language is ambiguous." (citation and quotations omitted)).

---

**3.**  Utah Code Ann. § 78–51–41 (2000) was repealed and replaced by another attorney lien statute codified at Utah Code Ann. § 38–2–7 (2001). We address section 78–51–41, as it was the relevant statute at the time Eastmond filed his lien.

¶ 12 Utah Code Ann. § 78–51–41 allows attorneys to contract with clients for payment of attorney fees and allows attorneys to file liens against clients' claims or counterclaims. However, pursuant to the plain language of section 78–51–41, the parties cannot provide by contract for payment that is "restrained by law." Utah Code Ann. § 78–51–41.

■ ¶ 13 Utah Code Ann. § 63–30–22(2) plainly provides that "[e]xecution, attachment, or garnishment may not issue against a governmental entity." We view section 63–30–22 to be a "restrain[t] of law" as the phrase is used in section 78–51–41. Utah Code Ann. § 78–51–41. The restrictions imposed by section 63–30–22 cannot be ignored or contracted away. *See* Utah Code Ann. § 78–51–41. Thus, liens of any kind, even those liens created pursuant to section 78–51–41, may not attach against a governmental entity.

¶ 14 After reviewing the plain language of sections 62A–11–102 and 62A–11–104 to –106, we conclude that ORS is a governmental entity as the term is used in section 63–30–22(2). *See Utah Dep't of Soc. Servs. v. Adams,* 806 P.2d 1193, 1195 n. 2 (Utah Ct. App.1991) (noting ORS is "an enforcement arm of the Department of Social Services"). When Wife sought the assistance of ORS to enforce the child support order, ORS stood in her place and collected child support payments on her behalf. Consequently, the funds Eastmond seeks to attach are in the possession and control of ORS, a governmental agency that is immune from execution, attachment, or garnishment. *See* Utah Code Ann. § 63–30–22(2). As such, Eastmond's lien cannot attach to funds in ORS's control.[4]

## II. Future Child Support Payments

■ ¶ 15 Before addressing Eastmond's cross appeal asserting that he should have been granted a lien on ongoing child support, we must first determine whether the trial court was vested with subject matter jurisdiction over his claim.[5] "[Q]uestions regarding subject matter jurisdiction may be raised at any time because such issues determine whether a court has authority to address the merits of a particular case." *Housing Auth. v. Snyder,* 2002 UT 28,¶ 11, 44 P.3d 724. "[S]ubject matter jurisdiction is an issue that can and should be addressed sua sponte when jurisdiction is questionable." *Petersen v. Utah Bd. of Pardons,* 907 P.2d 1148, 1151 (Utah 1995). "Further, because it is a threshold issue, we address jurisdictional questions before resolving other claims." *Snyder,* 2002 UT 28 at ¶ 11, 44 P.3d 724.

¶ 16 An attorney seeking to enforce a lien must either bring a separate action to enforce his attorney lien or intervene in the underlying suit prior to judgment being entered. *See Ostler v. Buhler,* 1999 UT 99,¶ 5 n. 3, 989 P.2d 1073 (noting that absent " 'special circumstances' " attorney liens should be enforced in a separate action (citation omitted)); *Albrechtsen v. Albrechtsen,* 18 Utah 2d 55, 414 P.2d 970, 971 (1966) (finding that attorney who did not intervene in underlying suit had no standing to appeal denial of garnishment). There being no question that Eastmond did not file a separate action to enforce his attorney lien, we focus our analysis on whether Eastmond properly intervened in the underlying action.

¶ 17 In *Ostler,* an attorney filed a lien to collect his fees from the proceeds of a settlement. 1999 UT 99 at ¶ 2, 989 P.2d 1073. The attorney moved to have the proceeds deposited with the court and then requested the court pay him directly. *See id.* at ¶¶ 2, 3.

4. Eastmond argues that *Eastmond v. Neilson,* 912 P.2d 994 (Utah Ct.App.1996), should control the outcome of this case. There, relying upon *Hampton v. Hampton,* 85 Utah 338, 39 P.2d 703, 706 (1935), we noted that "an attorney lien [could] be satisfied from a child support obligation." *Neilson,* 912 P.2d at 996. In opposition, the State asks that we overrule *Neilson* on the grounds that current federal law makes the reasoning in *Neilson* unsound. Because we conclude that ORS's identity as a governmental entity precludes any attorney lien from attaching to

funds in ORS's possession, we need not revisit our decision in *Neilson.*

5. " 'Subject matter jurisdiction is the power and authority of the court to determine a controversy and without which it cannot proceed.' " *Transworld Sys. v. Robison,* 796 P.2d 407, 409 (Utah Ct.App.1990) (quoting *Thompson v. Jackson,* 743 P.2d 1230, 1232 (Utah Ct.App.1987) (per curiam)).

The client did not respond to these motions, and they were granted. *See id.* at ¶ 3. The client then retained new counsel and objected to the court's ruling on the motions, claiming the court "lacked jurisdiction to enter an order in favor of a non-party." *Id.* at ¶ 4 (footnote omitted).

¶ 18 On appeal, the supreme court concluded that as a non-party to the underlying action the attorney had to file a motion to intervene, pursuant to rule 24 of the Utah Rules of Civil Procedure, for the court to have jurisdiction over his claim. *See id.* at ¶ 7. The court acknowledged, however, that the parties could waive the need for formal intervention. *See id.* However, the court determined that no waiver had occurred because the attorney's motions

> were *post-judgment* motions that in no way affected the merits of the underlying action, its settlement, or its subsequent dismissal. In essence, the *case between the parties had ended before [the attorney] attempted to intervene.* Under such circumstances, we can see no reason to require a party to respond to a non-party's post-judgment motions at the risk of having those non-parties treated as proper interveners.

*Id.* at ¶ 9 (emphasis added) (footnote omitted). The court further specifically concluded that "[t]he general rule is that 'intervention is not to be permitted after entry of judgment.' " *Id.* at ¶ 9 n. 3 (citation omitted). Because the parties had not waived formal intervention, the supreme court concluded that the attorney had failed to properly intervene and that the attorney lien was filed after judgment. *See id.* at ¶ 9. The court then determined that the trial court had no jurisdiction to enforce the attorney lien. *See id.*

¶ 19 Here, Eastmond did not attempt to formally intervene, nor did the parties waive the intervention requirement. In its memorandum in support of the motion to quash, ORS argued that the trial court did not have jurisdiction over Eastmond because the court could not foreclose the lien in the original action out of which the fees arose. ORS also argued that Eastmond "[did] not have standing to enforce his attorney lien in [that] action" because he "[was] not a party to his client's divorce action." Thus, ORS opposed Eastmond's presence in the suit and has not waived the requirement that he formally intervene. Eastmond did not intervene and, consequently, was not a party to the divorce action. Thus, the trial court had no jurisdiction to enforce his attorney lien.

¶ 20 Moreover, we conclude that Eastmond could not have successfully intervened in the divorce action even had he sought to do so. As the court in *Ostler* stated, " 'intervention is not to be permitted after entry of judgment.' " *Id.* at ¶ 9 n. 3 (citation omitted). Here, Eastmond filed his notice of attorney lien after the trial court entered its order awarding past-due child support. This order constitutes an "entry of judgment" that precludes Eastmond's intervention.[6] Thus, we conclude that the only remedy available to Eastmond was to file a separate action.[7] *See Neilson v. Neilson,* 780 P.2d 1264, 1271 (Utah Ct.App.1989) (stating "the statutory charging lien may not be foreclosed by way of the attorney's request for that relief in the original action; instead, counsel must bring a separate action against the client to determine the amount of the fee and foreclose the lien").[8]

¶ 21 Thus, while the trial court in this case had subject matter jurisdiction to enforce

---

**6.** That the order was entitled a "temporary" order is not fatal, for we construe the order only as being "temporary" in relation to future child support payments. In contrast, the trial court made a finding regarding the amount of past-due child support, and this constitutes a "final ruling" for the purpose of determining whether a party can intervene.

**7.** Eastmond did ask the court to "bifurcate" his attorney lien from the divorce action. However, we conclude that Eastmond initially should have filed a separate action rather than requesting that the court bifurcate the original action, be-

cause the court had already issued a final order regrading past-due child support.

**8.** We also note that rule 1.7 of the Utah Rules of Professional Conduct prevented Eastmond from intervening in the suit while acting as Wife's counsel. Pursuant to rule 1.7, "[a] lawyer shall not represent a client if the representation of that client may be materially limited by ... the lawyer's own interest." Utah Rules of Professional Conduct 1.7. Here, it is clear that at the time Eastmond sought to enforce his attorney lien, Eastmond's interests were in conflict with Wife's. Both Eastmond and Wife claimed an interest in

attorney liens, *see* Utah Code Ann. §§ 78–3–4(1) (2002) and 78–51–41, it did not have subject matter jurisdiction over Eastmond's specific claim because Eastmond had not properly intervened in the action or otherwise presented his claim to the trial court. As the court in *Sache v. Wallace*, 101 Minn. 169, 112 N.W. 386, 387 (1907), stated:

> Though [a court] has general jurisdiction over the subject-matter, ... its power to decide and determine matters in dispute between the parties in a given action is *limited to those questions which are brought before it by the pleadings.* ... When the court goes beyond and outside the issues made by the pleadings, ... the authority of the court is exceeded, even though it had jurisdiction of the general subject of the matters adjudicated.

(Emphasis added.) Here, we conclude that Eastmond did not properly intervene in the suit and that his claims were not before the trial court.

## CONCLUSION

¶ 22 In summary, at the time Eastmond attempted to enforce his lien he had not

moved to intervene and the need for intervention had not been waived. Furthermore, had Eastmond sought to intervene he would not have been successful because the trial court had already entered a final judgment. Accordingly, the trial court did not have jurisdiction over Eastmond's claim. Because the trial court did not have jurisdiction, neither do we, and we dismiss Eastmond's cross appeal.

¶ 23 We reverse the trial court's order attaching Eastmond's lien to funds collected by ORS. We dismiss Eastmond's cross appeal for lack of jurisdiction.

WE CONCUR: RUSSELL W. BENCH and PAMELA T. GREENWOOD, Judges.

the child support payments. By seeking to enforce his attorney lien on these funds, Eastmond placed his own interest before that of his client. Thus, even had Eastmond sought to intervene, rule 1.7 prevented intervention absent Eastmond's withdrawal as Wife's counsel. *See also Kilpatrick v. Wiley, Rein & Fielding*, 909 P.2d

1283, 1290 (1996) ("As fiduciaries, attorneys have a legal duty 'to represent the client with undivided loyalty, to preserve the client's confidences, and to disclose any material matters bearing upon the representation [of the client].' " (citation omitted)).