2014 UT App 267

# THE UTAH COURT OF APPEALS

DESERET FIRST FEDERAL CREDIT UNION,
Plaintiff and Appellee,

*v.*

JERRY W. PARKIN,
Defendant and Appellee.

GEORGE K. FADEL,
Proposed Intervenor and Appellant.

Memorandum Decision
No. 20130010-CA
Filed November 14, 2014

Second District Court, Farmington Department
The Honorable David R. Hamilton
No. 090700605

George K. Fadel, Appellant Pro Se

Wallace O. Felsted and Gregory S. Moesinger,
Attorneys for Appellee Deseret First Federal Credit
Union

David J. Shaffer, Attorney for Appellee
Jerry W. Parkin

JUDGE STEPHEN L. ROTH authored this Memorandum Decision, in
which JUDGE GREGORY K. ORME and SENIOR JUDGE JUDITH M.
BILLINGS concurred.[1]

---

1. The Honorable Judith M. Billings, Senior Judge, sat by special
assignment as authorized by law. *See generally* Utah R. Jud.
Admin. 11-201(6).

ROTH, Judge:

¶1      George K. Fadel appeals from three district court orders. First, he contends the district court erred in denying his motions to intervene in litigation between Jerry W. Parkin, as successor trustee for the Wilma G. Parkin Family Protection Trust (the Trust), and Deseret First Federal Credit Union (Deseret First). Second, he challenges the court's decision to strike his corresponding complaint in intervention. Finally, he challenges the district court's entry of rule 11 sanctions against him. We affirm.

¶2      In August 2009, Deseret First filed suit against the Trust to quiet title to a parcel of land that Deseret First claimed it had purchased from the Trust several years earlier through an installment contract. The Trust hired Fadel, an attorney, on a contingent fee arrangement to represent it in the suit. In the written client agreement, the Trust agrees to pay Fadel "one-half of the amounts recovered by settlement or judgment . . . in excess of $10,000." The fee agreement further provides that recovery in the form of property "could result in [Fadel] obtaining a joint interest in the land with the Trust[]" to the extent of the agreed-upon fee.

¶3      Against Fadel's advice, the Trust entered into mediation with Deseret First on October 20, 2011. Fadel attended a portion of the mediation but was not present for its conclusion.[2] The mediation resulted in an agreement (the Settlement Agreement) whereby the Trust agreed to sell the disputed parcel to Deseret

---

2. Although the district court found that Fadel left the mediation prior to its conclusion, the parties dispute the circumstances leading to Fadel not being present for the entire mediation. We conclude that the precise circumstances are not pertinent to the issues presented on appeal.

First for $30,000, a sum lower than Fadel believed could be obtained if the case proceeded to trial. The Trust hired new counsel, David Shaffer, and on November 15, 2011, the Trust, through Shaffer, and Deseret First filed a stipulated motion to dismiss the quiet title suit with prejudice. Although he was aware of the settlement and that he had been replaced as counsel on the case, Fadel then filed a motion in limine, purportedly on behalf of the Trust.[3] Fadel also filed an objection to his client's stipulated request for dismissal on the basis that "it is best for all concerned that the case be tried for the benefit of the Trust beneficiaries as well as for the attorney's fee." In response, Deseret First filed a motion for sanctions against Fadel. The motion cited rule 11 of the Utah Rules of Civil Procedure and the inherent authority of the court to regulate the conduct of attorneys as bases for sanctioning Fadel for his continued attempts to act as counsel when his client had replaced him with another attorney.

¶4    On December 2, 2011, the district court entered an order dismissing the case. The order did not address the motion for sanctions against Fadel. Despite the dismissal, in January 2012, Fadel queried the district court regarding the status of his earlier motions and sought to file additional documents on behalf of the Trust. At that point, the court issued a ruling (the First Ruling), noting that "[t]he parties resolved their dispute" even though "Mr. Fadel had apparently advised his then clients [the Trust] not to settle." The court concluded that "[i]t was the [Trust's]

---

3. The thrust of this motion was to ask the court to preclude Deseret First from pursuing the claim for contractual attorney fees that it had included in its complaint, an issue apparently mooted by the Settlement Agreement. But the merits of the motion are not at issue here; rather, its significance lies in the fact that Fadel filed it after having been replaced as counsel for the Trust.

decision how to resolve the[] case. A Substitution of Counsel was filed," and "Mr. Shaffer is recognized by the Court as [the Trust's] counsel. Mr. Fadel has no current basis to submit pleadings on behalf of [the Trust]." The court then stated that it would not consider any of the documents filed by Fadel after he had been replaced as counsel but that it would consider Deseret First's motion for sanctions. The court directed Fadel to respond to the sanctions motion by the end of January. Fadel did not file a response.

¶5    On August 1, 2012, the court held a hearing on the motion for sanctions. At the hearing, the district court asked Fadel to explain whom he thought he was representing when he filed the motion in limine and the objection to the request for dismissal in light of the fact that the Trust "wanted to settle this case" and "there was a settlement agreement that was signed off by [Fadel's] former clients." The court also inquired about Fadel's motivation for having filed an appeal of the dismissal of the case on the Trust's behalf,[4] given that he had acknowledged being aware of the Trust's desire to settle the case. Fadel responded that because he had never been properly replaced as the attorney of record and because he was not present for the mediation's resolution, no valid settlement of the case was possible. Fadel

---

4. Sometime after the First Ruling, Fadel had filed an appeal from the district court's dismissal of the Deseret First–Trust litigation. We dismissed Fadel's appeal in mid-May 2012 on two grounds: (1) because he had been replaced as counsel, Fadel had "no right to file a notice of appeal on behalf of [the Trust]," and thus, the court had no jurisdiction to consider the propriety of the dismissal; and (2) no final, appealable order relating to Fadel himself had yet been entered because "[a] motion for sanctions against Fadel is currently pending in the district court." *Deseret First Fed. Credit Union v. Parkin*, 2012 UT App 140, ¶¶ 2–4, 278 P.3d 630 (per curiam).

also admitted that he was pursuing his own interest in the contingent fee and argued that the Trust could not settle the case without his consent because of that fee arrangement.

¶6    Following the hearing, the court entered a ruling (the Second Ruling), granting the motion for sanctions on the basis that Fadel had violated rule 11 of the Utah Rules of Civil Procedure. Specifically, the court concluded that "it was not reasonable under the circumstances for Mr. Fadel to believe he had authority to file on behalf of his former client and that he had no evidentiary basis for his contentions in those filings because he had already been replaced as counsel." The court then instructed both Deseret First and the Trust to submit affidavits regarding their attorney fees.

¶7    Approximately one week later, Fadel filed a motion, under rule 24(a) of the Utah Rules of Civil Procedure, to intervene as a party in this litigation. Deseret First opposed intervention and filed a second request for sanctions against Fadel. Fadel responded with a second motion to intervene and a complaint in intervention. Deseret First then moved to strike the complaint in intervention.

¶8    On November 5, 2012, the district court held a hearing on all pending motions. At the hearing, Fadel stated that he was appearing on behalf of himself as intervenor and, despite the court's First Ruling, on behalf of the Trust in the Deseret First–Trust lawsuit as well. The district court then issued a written decision addressing the issues raised in both the August and November hearings. In its Consolidated Findings of Fact and Order (the Order), the court decided that the settlement was valid and that it "would not disturb its [First] Ruling . . . , which resolved the issue of enforcing the parties' Settlement Agreement." Thus, because a judgment of dismissal had already been entered and "'intervention is not to be permitted after entry of judgment,'" *Fisher v. Fisher*, 2003 UT App 91, ¶ 18, 67 P.3d 1055 (quoting *Ostler v. Buhler*, 1999 UT 99, ¶ 9 n.3, 989 P.2d 1073),

the court denied Fadel's motions to intervene as untimely and struck his complaint in intervention. Consistent with the Second Ruling, the Order also required that Fadel pay attorney fees to Deseret First and the Trust as a sanction for his

> willful misconduct . . . after the settlement of this case. . . . [E]ven after being advised by the court that he (Mr. Fadel) is not recognized as counsel for the Trust and that he has no basis to submit pleadings on behalf of the Trust or pursue claims on behalf of the Trust, Mr. Fadel has repeatedly attempted to represent the Trust in filing motions, and he has repeatedly taken positions that are frivolous, meritless, and inconsistent with the Settlement Agreement, the Order of Dismissal with Prejudice, the First Ruling, and the Second Ruling.

The court explained that it was entering the sanctions on the "combined bases" of rule 11 and the inherent powers of the court. The Order required Fadel to pay $5,500 toward Deseret First's attorney fees and $4,500 toward the Trust's. Fadel appeals.

### I. The Motions to Intervene and to Strike the Complaint in Intervention

¶9      Fadel first asserts that the district court erred in denying his motions to intervene as a matter of right and in granting Deseret First's motion to strike his complaint in intervention.[5]

---

5. Fadel asserts that the district court's ruling regarding the complaint in intervention did not address "the legality or propriety of the second motion and the complaint." However, the district court specifically denied both Fadel's first and second

(continued...)

Rule 24(a) of the Utah Rules of Civil Procedure affords a person the right to intervene so long as the person seeking to intervene can demonstrate

> (1) that [the] motion to intervene was timely, (2) that [the person] has "an interest relating to the property or transaction which is the subject of the action," (3) "that the disposition of the action may as a practical matter impair or impede [the person's] ability to protect that interest," and (4) that [the person's] interest is not "adequately represented by existing parties."

*Supernova Media, Inc. v. Pia Anderson Dorius Reynard & Moss, LLC*, 2013 UT 7, ¶ 22, 297 P.3d 599 (quoting Utah R. Civ. P. 24(a)). In this case, the district court denied Fadel's motion to intervene because it was untimely. "We review for abuse of discretion the district court's determination of whether the motion to intervene was timely filed." *Id.* ¶ 15.

¶10    "[T]imeliness . . . [is] determined under the facts and circumstances of each particular case, and in the sound discretion of the court." *Id.* ¶ 23 (alterations and omission in original) (citation and internal quotation marks omitted). As a general rule, however, "'intervention is not to be permitted after entry of judgment.'" *Fisher*, 2003 UT App 91, ¶ 18 (quoting *Ostler*, 1999 UT 99, ¶ 9 n.3); *see also Supernova Media*, 2013 UT 7, ¶ 24 (noting that a motion to intervene is generally considered timely "if it is filed before the final settlement of all issues by all parties" (citation and internal quotation marks omitted)). A judgment includes "any order from which an appeal lies." Utah R. Civ. P. 54(a).

---

motions to intervene and explicitly struck the complaint in intervention as a result.

¶11     Fadel contends that a final, appealable judgment had not yet entered when he filed his motions to intervene in August and September 2012 because the district court's final ruling in the case was not entered until December 2012. But Fadel focuses on the wrong order. The underlying case—the litigation between Deseret First and the Trust—had been dismissed in December 2011, months before Fadel sought to intervene. Only the motion for sanctions against Fadel, a non-party, remained pending before the court when Fadel moved to intervene. That the December 2011 dismissal of the case between Deseret First and the Trust was a final judgment seems unassailable, and, in fact, Fadel attempted to appeal that order, *see supra* note 2. A motion to intervene must be filed "before the final settlement of all issues by all *parties*." *Supernova Media*, 2013 UT 7, ¶ 24 (emphasis added) (citation and internal quotation marks omitted). Because the parties (Deseret First and the Trust) had resolved their dispute and the litigation had been dismissed before Fadel filed his motion to intervene, his motion was not timely. *See id.*; *see also Fisher*, 2003 UT App 91, ¶¶ 18, 20 (noting that by the time of the appeal, any petition to intervene would be untimely because the case between the parties had ended).[6] Without a timely motion, Fadel has failed to carry his burden of demonstrating that he was entitled to intervene. *See Supernova Media*, 2013 UT 7,

_____

6. Fadel asserts that *Fisher v. Fisher*, 2003 UT App 91, 67 P.3d 1055, "is not relevant in that it is a domestic relations case" and the attorney lien statute has since been amended in relation to domestic relations cases. However, our conclusion in *Fisher* that the attorney could not move to intervene because a final judgment had already been rendered, making any intervention motion untimely, was based on general intervention principles rather than the attorney lien statute. *See id.* ¶¶ 18, 20. As a consequence, *Fisher* cannot be distinguished in the way that Fadel claims; rather, the case supports the district court's decision here.

¶ 22. Accordingly, we affirm the district court's denial of Fadel's motions to intervene. And because the motions to intervene were properly denied, it was appropriate for the district court to strike the complaint in intervention.

## II. Sanctions

¶12    Fadel also challenges the district court's order that he pay sanctions. Fadel argues that the court erred in determining that he had violated rule 11 of the Utah Rules of Civil Procedure because (1) neither Deseret First nor the Trust had complied with the requirements of rule 11 that are prerequisite to an award of sanctions and (2) his conduct did not merit sanctions in the first place.

¶13    With regard to his first argument, Fadel misconstrues the nature of the district court's sanction order. The court did not rely only on the parties' sanction motions under rule 11 but determined more broadly that "[u]nder the combined bases and effect of Deseret First's [motions for sanctions,] the Court's First Ruling, the Court's inherent powers, and the remand order from the Utah Court of Appeals" directing the district court to consider attorney fees, "Fadel had violated rule 11." (Citations omitted.) Thus, it appears that the court was relying on both its inherent authority and rule 11 when it ordered sanctions. And Fadel fails to challenge the court's alternative basis for its decision—a court's authority to enter the award based on its inherent powers. *See Allen v. Friel*, 2008 UT 56, ¶ 7, 194 P.3d 903. However, even if rule 11 were the only basis for the court's sanctions order, the award was within the district court's authority, whether or not the parties' motions complied with the rule.

¶14    Rule 11 of the Utah Rules of Civil Procedure provides for the entry of sanctions against an attorney when the attorney "present[s] a pleading . . . or other paper to the court" for "any improper purpose, such as to harass or to cause unnecessary

delay or needless increase in the cost of litigation" or that asserts "claims, defenses and other legal contentions . . . [that are not] warranted by existing law" or are frivolous. Utah R. Civ. P. 11(b)–(c). Sanctions may be sought by one of the parties to the litigation or ordered by the court sua sponte. *Id.* R. 11(c). Fadel correctly points out that when a party moves for sanctions, rule 11(c)(1)(A) lays out specific prerequisites for submitting such a motion to the court. *See id.* R. 11(c)(1)(A). However, Fadel overlooks rule 11(c)(1)(B), which governs the proceedings when a court orders sanctions "[o]n its own initiative," *id.* R. 11(c)(1)(B). In that case, the court must "enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney . . . to show cause why [he or she] has not violated subdivision (b)." *Id.* That is just what the court did in the First Ruling. The court informed Fadel that it was concerned about Fadel's ongoing attempts to represent the Trust and file documents when the Deseret First–Trust litigation had settled and Fadel was no longer recognized as the Trust's attorney. The court then directed Fadel to file a response to the motion for rule 11 sanctions, or in other words, to demonstrate that he had not violated rule 11. Accordingly, whether the parties' motions for sanctions complied with rule 11 does not determine the outcome; the district court was authorized to proceed under rule 11 on its own initiative and did so once Fadel drew its attention to the deficiency in the parties' own rule 11 motions.

¶15    We now consider whether the court properly ordered sanctions. When reviewing an order for rule 11 sanctions, we review the ultimate conclusion that the rule has been violated as well as any subsidiary legal conclusions for correctness. *Griffith v. Griffith*, 1999 UT 78, ¶ 10, 985 P.2d 255. We review the court's factual findings for clear error. *Id.* We conclude that the district court correctly determined that Fadel violated rule 11 because his actions indicated an improper purpose and were, in the words of the district court, "frivolous, meritless, and inconsistent

with the Settlement Agreement, the Order of Dismissal with Prejudice, the First Ruling, and the Second Ruling."

¶16   Fadel's contingent fee agreement with the Trust provides that he is to receive "one-half of the amounts recovered by settlement or judgment . . . in excess of $10,000. The amounts recovered [are] to be measured by the value received in cash or property or both free from claim from Deseret [First,] which could result in [Fadel] obtaining a joint interest in the land . . . ." Thus, under the fee agreement, the Trust's decision to settle the litigation by selling the property to Deseret First for $30,000 meant that Fadel was entitled to a fee of $10,000. Fadel, however, believed that the Trust's position in the litigation was strong and that it would receive much more if the case were actually tried, perhaps as much as $300,000. Such an outcome, of course, would have significantly increased the amount of his fee.

¶17   An attorney, however, may not put his or her own interests ahead of the client's. *Fisher v. Fisher*, 2003 UT App 91, ¶ 20 n.8, 67 P.3d 1055 (citing Utah Rules of Professional Conduct 1.7(a), which prohibits an attorney from representing a client when the lawyer's own personal interests may materially limit his or her ability to provide adequate representation). Fadel's prioritization of his interest in his fee over the wishes of the Trust amounted to a conflict of interest. *See* Utah R. Prof'l Conduct 1.7 cmt. 1 (noting that a concurrent conflict of interest between an attorney and a client can arise "from the lawyer's own interests"). The Utah Rules of Professional Conduct prohibit an attorney from providing representation to a client "if the representation involves a concurrent conflict of interest." *Id.* R. 1.7(a). In *Fisher v. Fisher*, 2003 UT App 91, 67 P.3d 1055, we observed that an attorney's interest in collecting his fee became such a conflict once that interest interfered with the client's right to collect the child support awarded to her. *Id.* ¶ 20 n.8. There, the attorney sought to enforce an attorney lien he placed on his client's right to receive child support payments from the child's father. *Id.* We explained that "at the time [the attorney] sought to

enforce his attorney lien, [his] interests were in conflict with [his client's,]" and the prioritization of his own interests over his client's warranted termination of his representation as counsel. *Id.*

¶18 The district court correctly determined that the circumstances in this case precluded Fadel from continuing to represent the Trust once their views of how to proceed diverged so significantly. A lawyer is bound to "abide by a client's decision whether to settle a matter." Utah R. Prof'l Conduct 1.2(a); *see also id.* R. 1.2 cmt. 1 ("The decisions specified in paragraph [1.2](a), such as whether to settle a civil matter, must also be made by the client."). Thus, even if the attorney believes it is in the client's best interest to continue to trial, once the attorney's advice to do so is refused, he or she must defer to the client's desire to resolve the litigation. There is no dispute that the Trust desired to settle the litigation with Deseret First for the sum of $30,000. As a result, once Fadel had given his contrary advice, he was required to either proceed in support of the Trust's wishes or withdraw from the case. *See id.* R. 1.2(a).

¶19 Yet after the mediation, Fadel did not withdraw; rather, he put his own interest in collecting a larger fee above the Trust's decision to resolve the case short of trial. Indeed, Fadel did not seek merely to protect his attorney lien, but he instead sought to have the Trust's decision to replace him as counsel vacated and to take over the litigation by setting aside the Settlement Agreement so that the case could proceed to trial against the Trust's wishes. He filed pleadings in which he purported to be the Trust's attorney when he was not, including an objection to the Trust's stipulation to dismiss the case and an appeal, and he continued to assert that he represented the Trust even after the court warned him that he had been removed as counsel.[7]

---

7. Fadel argues that he could not be replaced as counsel because he did not give his consent to the substitution as required by rule

(continued...)

Because Fadel acted in disregard of the Trust's decision to settle the case and instead decided to pursue his own desire to take the case to trial in order to increase his potential fee, Fadel had a conflict of interest that precluded him from representing the Trust any further.

¶20    Fadel nevertheless maintains that under the totality of the circumstances, his actions were meritorious. He asserts that had he been billing the Trust at his normal hourly rate rather than representing it on a contingent fee basis, he would have billed $47,000 for legal services provided up to the time of mediation. He contends that he has not yet received any payment for his services. However, whatever right Fadel may have had to be paid for his work did not permit him to continue to represent the Trust where his focus on the amount of his fee came into direct conflict with his client's right to resolve the litigation in a way that met its own goals.

¶21    Accordingly, we conclude that there was no error in the district court's determination that Fadel's actions in purporting to represent the Trust, contrary to its express wishes and its own

---

74 of the Utah Rules of Civil Procedure. *See* Utah R. Civ. P. 74(d) ("An attorney may replace the counsel of record by filing and serving a notice of substitution of counsel signed by former counsel, new counsel, and the client.").

    The primary purpose of rule 74, however, is to keep the judicial process moving forward when a party desires a change in representation. *See id.* R. 74 (explaining the process for attorney withdrawal and appointment of new counsel). It cannot be interpreted to preclude the district court from recognizing new counsel in the face of an attorney's refusal to withdraw, where the client desires it and new counsel has been engaged and is ready to proceed.

judgment of where its interests lie, warranted an award of sanctions. We therefore affirm that award.[8]

¶22    In summary, we affirm the district court's decisions to deny Fadel's motions to intervene and to strike the complaint in intervention because the intervention motions were untimely. We also affirm the award of sanctions because there was a basis for the district court's findings that Fadel acted for an improper purpose and asserted claims that were without merit and frivolous.

_____

---

8. Fadel does not challenge the amount of the sanction award or the type of sanctions awarded.