VOROS, Judge
(concurring dubitante):
{83 I do not read.the Governmental Immunity Act as the majority opinion does. I do read Funk v. Utah State Tax Commission, 839 P.2d 818 (Utah 1992), as the majority does, and I agree it requires affirmance here. But I question the soundness of Funk.
¶ 34 First, as to the Governmental Immunity Act.[14] I agree with amicus Utah State Tax Commission that the Act "does not specifically permit or prevent Utah from being served with a writ of garnishment to garnish funds or property belonging to a third party." The Act states, "A governmental entity and an employee of a governmental entity retain immunity from suit unless that immunity has been expressly waived in this chapter." Utah Code Ann. § 63G-7-101(8) *1028 (LexisNexis Supp. 2015). - I doubt that this reference to "suit" encompasses a. garnishment seeking funds belonging to a third party-Asset Acceptance has not sued the State Treasurer. - Therefore, its . garnishment does not fall within the plain language of section 63G-7-101(8). .
€35 Section 63G-7-101 states that the Act's immunities and waivers "govern[ ] all claims against governmental entities or against their employees or agents arising out of the performance of the employee's duties, within the scope of employment, or under color of authority." Id. § 63G-T-101(2)(b) (emphasis added). Reasonable minds could disagree as to whether a garnishment served on the State Treasurer constitutes a "claim." But the Act does not apply to all claims, only those "arising out of the performance of the employee's duties, within the scope of employment, or under color of authority." And Asset Acceptance's garnishment does not arise out 'of the performance of any governmental employee's duties So even if Asset Acceptance's garnishment did qualify as a "claim" against a governmental entity, it nevertheless does not fall within the plain language of section 68G-T-101.
136 I also agree with the Tax Commission that § 63G-7-608 "does not appear to apply to writs seeking third party funds." That section states, "Execution, attachment, or garnishment may not issue against a governmental entity." Id. § 63G-7-608(2) (2008). But we interpret statutes "in harmony with other statutes in the same chapter and related chapters." State v. Barrett, 2005 UT 88, ¶ 29, 127 P.3d 682 (citation and internal quotation marks omitted). And this sentence addressing garnishment appears in Part 6 of the Act, which deals with "actions" (which require an undertaking of not less than $300), judgments "against a governmental entity," and the unavailability' of punitive damages against the government-in short, lawsuits against governmental entities. In this context, the statement that "garnishment may not issue against a governmental entity" most plausibly refers to the situation where the government is the judgment debt- or, not the garnishee. True, our opinion in Fisher reads section 68G-7-608 to prevent liens against property owned by third parties. See Fisher v. Fisher, 2003 UT App 91, ¶ 13, 67 P.3d 1055. But I find Fisher unpersuasive for the reason stated by the Tax Commission: Fisher "never explains how the Immunity Act could have applied to the proceedings. There was no claim arising out of a public employee's duties."
T37 In sum, I do not agree that sections 63G-T-101(2), 68G-7-101(8), or 68G-T-608 apply to a garnishment targeting third party funds in the hands of the State. But because I read Funk as the majority opinion does, I vote to affirm the judgment of the district court.
€38 That said, I doubt the soundness of Funk. Funk seems to address governmental immunity, but in fact applies section 78B-5-808. See Funk v. Utah State Tax Comm'n, 839 P.2d 818, 820 (Utah 1992). That section does nothing more than make "salaries of public officers subject to garnishment"-that is in fact the title of the section. The section resides in the Judicial Code, far from the Governmental Immunity Act, in a chapter titled "Procedure and Evidence" and a part titled "Miscellaneous." It does not purport to be a waiver of governmental immunity; indeed, nothing in Part 8 seems to address governmental immunity. The sections surrounding section 808 address tender, money deposited in court, bonds, payment of costs by the State and counties, service of process, sureties on stay bonds, depositions, releases, and comparative negligence.
1 39 So while we read Funk as an interpretation of the limits of governmental immuntty, really it interprets a statute with no apparent connection to governmental immunity. Nor does Funk ever cite the Governmental Immunity Act. It refers to governmental immunity only twice; both references describe the allegations of the complaint filed in that case. And in that case, as in this one, the Tax Commission took the position that nothing in the Utah Code prevented the State from releasing third party funds to judgment creditors pursuant to writs of garnishment. See Funk, 839 P.2d at 820.[15] Without ana *1029 lyzing whether such a garnishment qualified as a claim against the government and without citing any legal prohibition against the release of such funds, the Funk court read a negative pregnant into the statute affirmatively authorizing garnishment of money owed to governmental employees "or otherwise." See id. at 820-21. It held that but for the phrase "or otherwise," the law-precisely what law remained unstated-would prevent the garnishment at issue there. But notwithstanding its shaky analytical foundation, that holding binds this court. And it requires affirmance here.
40 Affirming this judgment will have significant real world implications. I agree with Judge Orme that, whatever its source, the policy we are constrained to implement in this case makes little sense. As Judge Orme notes in his concurring opinion, today's holding protects "judgment debtors from making good on their just obligations." Supra ¶ 30. And today's decision may extend that protection to thousands of such judgment debtors. Based on its reading of Funk-which we today reject-the Tax Commission routinely processes the very type of garnishments the State Treasurer here resists, In the past three fiscal years, the Tax Commission has received and responded to a total of 10,729 writs, resulting in 2,651 refunds garnished to the tune of $1,249,685. Today's oplmon will I fear, end that practice.

. "Historically, the ability to sue the State of Utah or one of its political subdivisions rested on a determination of whether the governmental entity was protected by the common law doctrine of sovereign immunity." Tindley v. Salt Lake City Sch. Dist., 2005 UT 30, ¶ 9, 116 P.3d 295. But '"[flhat changed in 1965, when the Utah Legislature enacted the Utah Governmental Immunity Act. . . ," Id. The Act represents 'the codification of soverelgn immunity," Hall v. Utah State Dep't of Corr., 2001 UT 34, ¶ 14, 24 P.3d 958, and thus “estabhshes the law of this state respecting the subjects to which [it] relates," Utah Code Ann. § 68-3-2(2) (LexisNexis 2010). It has "significantly altered the common law of sovereign immunity, and substituted a statutory framework to be interpreted by the courts and reshaped by the Legislature as- necessary from time to time." Madsen v. Borthick, 658 P.2d 627, 629-30 (Utah 1983). It represents a "careful balancing" of the need to protect the government from "a flood of lawsuits" on the one hand and the hardship imposed on parties injured by governmental acts on the other. Taylor ex rel. Taylor v. Ogden City Sch. Dist., 927 P.2d 159, 167 (Utah 1996). Thus while the Act has in some ways "limited Utah's sovereign immunity," Cope v. Utah Valley State Coll., 2014 UT 53, ¶ 16, 342 P.3d 243, it has in others "extended the scope of governmental immunity far beyond the common law doctrine of sovereign immunity," DeBry v. Noble, 889 P.2d 428, 434 (Utah 1995). These pronouncements suggest that the Act has wholly, supplanted the common law doctrine of sovereign immunity.

. Although the Utah State Tax Commission appears as amicus here by invitation of the court, *1029 in Funk it was the appellee.