2014 UT App 266

# THE UTAH COURT OF APPEALS

DEPATCO, INC.,
Plaintiff and Appellee,
*v.*
TETON VIEW GOLF ESTATES, LLC AND IDAHO DEVELOPMENT, LLC,
Defendants and Appellants.

Memorandum Decision
No. 20130882-CA
Filed November 14, 2014

Third District Court, Salt Lake Department
The Honorable Kate A. Toomey
No. 120905582

Michael R. Carlston, John E. Gates, and Adam M.
Pace, Attorneys for Appellants

P. Matthew Muir, Attorney for Appellee

JUDGE GREGORY K. ORME authored this Memorandum Decision,
in which JUDGE J. FREDERIC VOROS JR. and SENIOR JUDGE RUSSELL
W. BENCH concurred.[1]

ORME, Judge:

¶1 Teton View Golf Estates, LLC, and Idaho Development, LLC, appeal the trial court's declaratory judgment that, under Utah law, Teton View must pay non-member creditors in full before paying member creditors as it winds up its business and settles its obligations. We affirm.

---

1. The Honorable Russell W. Bench, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

¶2    In 2008, Idaho Development and another entity formed Teton View Golf Estates, a Utah limited liability company.[2] Idaho Development loaned Teton View a substantial sum with which to purchase and develop some land in Idaho. In return Teton View gave Idaho Development a promissory note secured by a deed of trust on the land. Teton View then hired DePatco, Inc., to provide materials and construction services. Teton View eventually failed, and Idaho Development brought an action in Idaho against Teton View and other parties to foreclose its deed of trust. *See Idaho Dev., LLC v. Teton View Golf Estates, LLC*, 272 P.3d 373, 375 (Idaho 2011). DePatco, which had recorded a materialman's lien against the land and thus was named as a defendant in the foreclosure action, moved for summary judgment against Idaho Development.

¶3    The Idaho court granted DePatco's motion because it determined that the loan from Idaho Development to Teton View was actually nothing more than a capital contribution made to a limited liability company by one of its members. Idaho Development appealed, and the Idaho Supreme Court vacated the judgment and remanded, holding that factual questions precluded summary judgment. *Id*. at 382. On remand, the Idaho trial court determined that Utah law governed the priority in which Teton View must pay its creditors. Accordingly, the Idaho trial court stayed its decision after DePatco brought the current action in Utah to obtain a definitive answer to the priority question.

¶4    Among other things, DePatco asked the Utah trial court for a declaratory judgment that, under Utah law, Teton View must use its assets to pay non-member creditors before paying member

---

2. When reviewing a trial court's grant of summary judgment, we recite the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party—in this case, appellants Idaho Development and Teton View Golf Estates. *See Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600.

creditors.[3] On that issue, DePatco and Idaho Development filed cross motions for summary judgment. The Utah trial court granted summary judgment "in favor of DePatco because Utah Code section 48-2c-1308 gives non-member creditors priority over member creditors for the distribution of the dissolved company's assets during the winding up phase." Idaho Development and Teton View appeal that decision.

¶5　　Despite the relatively complicated factual and procedural background of this case, there is effectively only one question before us now: Did the trial court err in ruling that Teton View must use its assets to pay DePatco before it pays Idaho Development? We conclude that the court did not err.

¶6　　Idaho Development and Teton View argue on appeal that the trial court misinterpreted or misapplied the relevant statutes. "The proper interpretation and application of a statute is a question of law," and we afford no deference to the trial court in reviewing its interpretation of applicable statutes. *Gutierrez v. Medley*, 972 P.2d 913, 914–15 (Utah 1998). We also review a "trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness." *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citation and internal quotation marks omitted).

¶7　　Idaho Development and Teton View base their arguments on sections of the Utah Code that are inapplicable or at least unhelpful. To begin with, they argue that sections 48-2c-1304 and 48-2c-1308 of the Utah Code must be read together to determine payment priority when a dissolved limited liability company winds up. This argument does not carry appellants very far.

---

3.　DePatco also asked the trial court to declare Teton View dissolved, which the trial court refused to do because it concluded that Teton View was already dissolved, if for no other reason than it failed to file an annual report in 2010.

¶8    Utah Code section 48-2c-1304 provides that dissolved limited liability companies, when winding up their affairs, shall pay all their debts and obligations or make provision for such payment. It also requires, in general terms, that if the assets are insufficient to do so, "the claims and obligations shall be paid or provided for according to their priority under law." Utah Code Ann. § 48-2c-1304 (LexisNexis 2010). Section 1308, however, is a more focused provision describing in detail how a dissolved limited liability company must distribute its assets in winding up its business. In general, "a statute dealing specifically with a particular issue prevails over a more general statute that arguably also deals with the same issue." *Lyon v. Burton*, 2000 UT 19, ¶ 17, 5 P.3d 616. Therefore, an intense examination of the interplay between sections 1304 and 1308 is of limited value. Instead, we will recognize, as the trial court correctly did, that the more specific statute—section 1308—controls in this instance, and we proceed with our analysis accordingly.[4] Subsection 1308(1) provides:

> After dissolution, and during winding up, the assets of the company shall be applied to pay or satisfy: (a) first, the liabilities to creditors other than members, in the order of priority as provided by law; (b)

---

4. The appellants argue that subsection (2) of section 1308 and subsection (2) of section 1304 apply to the case at hand. These subsections, however, deal exclusively with assets that remain after a company that is winding up pays all its debts. *See* Utah Code Ann. § 48-2c-1308(2) (LexisNexis 2010) (dealing with "assets remaining"); *id*. § 48-2c-1304(2) (dealing with "any remaining assets"). But this case deals with the sequence in which Teton View must pay its creditors and has nothing to do with how Teton View must apportion any remaining assets. Because we conclude that section 1304 is unhelpful in this context and because we determine that subsection (2) of section 1304 and subsection (2) of section 1308 are inapplicable, we base our analysis primarily on subsection (1) of section 1308.

second, the liabilities to members in their capacities as creditors, in the order of priority as provided by law; and (c) third, the expenses and cost of winding up.

Utah Code Ann. § 48-2c-1308(1 (LexisNexis 2010).

¶9　When interpreting a statute, we look first to the plain meaning of the pertinent language. *In re adoption of Baby E.Z.*, 2011 UT 38, ¶ 15, 266 P.3d 702. Here, the plain meaning of the language leads us to conclude that Teton View must pay non-member creditors, like DePatco, before it pays its only member creditor, Idaho Development.

¶10　The appellants argue that the general language in Utah Code section 48-2c-1304 requiring that a company pay its debts according to the "priority under law" should lead to a superior-title analysis under Utah law governing liens and mortgages, thereby circumventing section 1308's requirements to pay non-member creditors first. Section 1308, however, also uses a similar phrase, "priority as provided by law," to describe how assets should be distributed among non-member creditors as a group and then again to describe how any remaining assets should be distributed among member creditors as a group. Utah Code Ann. § 48-2c-1308(1). Reading sections 1304 and 1308 together, the phrase "priority under law" in section 1304 stands for the general proposition that a limited liability company must pay its debts in the order prescribed by law, which necessarily includes section 1308 and other Utah law as it applies within the framework of section 1308. And subsection 1308(1)'s reference to "in the order of priority as provided by law" in each of subsections (a) and (b) confirms that within each of the two broad categories—"creditors other than members" and "members in their capacities as creditors"—distribution is to be made in accordance with the priority scheme provided by law. Thus, a secured non-member creditor would recover before an unsecured non-member creditor, and a secured member creditor would recover before an unsecured

member creditor. But because non-member creditors are, by the express language of subsection 1308(1), paid before member creditors, even an unsecured non-member creditor would recover before a secured member creditor.[5]

¶11    As a further basis on which to resist the conclusion we reach, Idaho Development and Teton View assert that Teton View's operating agreement permissibly altered the priority of distribution prescribed in section 1308 by providing that it would be formed pursuant to an older version of the law that did not give non-member creditors priority. *See* Utah Code Ann. § 48-2b-138(1) (Michie 1998). Under some circumstances, Utah law contemplates that operating agreements may alter various "default" provisions of the law governing limited liability companies. Subject to some important limitations, Utah Code section 48-2c-502, in subsection (1), allows a company, through its operating agreement, to modify the default rules concerning the management of the company; the business or purpose of the company; the conduct of the company's affairs; or the relationship between the members, the managers, and the company. But the distribution of assets when winding up the company's business does not fall into one of these categories. Moreover, subsection 502(2) clarifies that where "the provisions of an operating agreement conflict with the provisions of this chapter, the provisions of this chapter shall control." *Id*. § 48-2c-502(2) (LexisNexis 2010).

¶12    Furthermore, subsection 502(1) is expressly limited by subsection 48-2c-120(1), which states that an "operating agreement may not . . . restrict rights of, or impose duties on, persons other than the members, their assignees and transferees, the managers, and the company, without the consent of those persons." *Id*. § 48-2c-120(1)(h). Section 1308 vests non-member creditors with a right to be paid first from a dissolved company's assets. Therefore, Teton

---

5. Such a scheme is unusual, to be sure, and it has been criticized. It has also been repealed. *See infra* note 6.

View's operating agreement could not have restricted the rights of DePatco and other non-member creditors without their consent. *See id*. § 48-2c-120(1)(h). Because Idaho Development and Teton View presented no evidence that DePatco consented to any such provision in Teton View's operating agreement, the provision would be invalid under Utah law. It is true that Utah laws governing limited liability companies should "be interpreted so as to give the maximum effect to the principle of freedom of contract," *id*. § 48-2c-1901, but this freedom of contract only applies to the contracting parties. Obviously, the freedom of two parties to contract with each other, and to do as they please with their rights inter se, does not permit them to bargain away the rights of a non-consenting third party. Therefore, this argument fails.

¶13   Finally, Idaho Development and Teton View argue that there was a dispute of material fact and that the trial court erred in granting summary judgment to DePatco. Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). In support of their argument, appellants list the facts that they contend were both material and in dispute: Teton View's manager told Idaho Development that it would get its money back; Teton View told Idaho Development it would get first priority; Idaho Development would never have entered into the agreement with Teton View unless it was guaranteed first priority; Idaho Development had a first-position deed of trust; Idaho Development never subordinated its deed to DePatco; and Idaho Development commenced its foreclosure action before Teton View was officially dissolved. All of these facts, however, are immaterial to the question before the trial court. In distinguishing between member creditors and non-member creditors, the mandate of Utah Code section 48-2c-1308 is not at the mercy of the intent of the parties or of the facts and circumstances unique to a case. As a result, all of these facts pressed by Idaho Development and Teton View, which we assume to be true in the posture of this case, are immaterial to our resolution of the dispositive legal issue.

¶14    Because Utah Code section 48-2c-1308 governs, we conclude that DePatco was entitled to a declaratory judgment that Teton View must pay its debt to DePatco and other non-member creditors before it pays its debt to Idaho Development, one of its members.[6]

¶15    Affirmed.

————————

6. The law that requires this result has been criticized. For example, the authors of a 2009 article in the Utah Bar Journal noted, "This member-creditor subordination penalty is neither warranted nor justified solely on the grounds that the creditor is a member. . . . The Utah LLC Act has the dubious distinction of being the only LLC statute that creates such an inequitable asset priority distribution." Justin J. Atwater & Russell K. Smith, *Utah LLCs vs. Other State LLCs: When Should Attorneys Consider Forming LLCs Outside Utah?*, 22 Utah B.J. 33, 34 (Sept./Oct. 2009). Indeed, the Utah Legislature has since enacted the Utah Revised Uniform Limited Liability Company Act, which requires an LLC, in winding up, to pay "its obligations to creditors, including members that are creditors." *See* Utah Code Ann. § 48-3a-711(1) (LexisNexis Supp. 2013). The new law, however, does not apply to a limited liability company formed before January 1, 2014, such as Teton View, until after January 1, 2016. *See id*. § 48-3a-1405. The result we reach in this decision, therefore, will only remain a reliable template for resolving similar disputes until January 1, 2016, when the new law fully replaces the old.