2016 UT App 25

# THE UTAH COURT OF APPEALS

ASSET ACCEPTANCE LLC,
Appellant,
*v.*
UTAH STATE TREASURER, UNCLAIMED PROPERTY ADMINISTRATOR,
Appellee.

Memorandum Decision
No. 20140686-CA
Filed February 4, 2016

Fourth District Court, American Fork Department
The Honorable Thomas Low
No. 129101488

Gregory M. Constantino, Attorney for Appellant

Sean D. Reyes, Thom D. Roberts, and Michael K.
Green, Attorneys for Appellee

Clark L. Snelson, Attorney for Amicus Curiae
Utah State Tax Commission

JUSTICE JOHN A. PEARCE authored this Memorandum Decision, in
which JUDGE GREGORY K. ORME concurred, with opinion.[1] JUDGE
J. FREDERIC VOROS JR. concurred dubitante, with opinion.

PEARCE, Justice:

¶1 Asset Acceptance LLC appeals the district court's order
quashing its writ of garnishment on the Unclaimed Property

---

1. Justice John A. Pearce began his work on this case as a
member of the Utah Court of Appeals. He became a member of
the Utah Supreme Court thereafter and completed his work on
the case sitting by special assignment as authorized by law. *See
generally* Utah R. Jud. Admin. 3-108(3).

Division (Administrator).[2] The district court concluded that Asset Acceptance's garnishment of property held by Administrator was not authorized by Utah Code section 78B-5-808, which provides for the service of a writ of garnishment on the State in certain instances. Asset Acceptance appeals.[3] We affirm.[4]

¶2 Asset Acceptance obtained a default judgment against a debtor for his unpaid credit card debt. In an attempt to satisfy the judgment, Asset Acceptance applied for a writ of garnishment against Administrator to obtain unclaimed property held by Administrator but purportedly belonging to the debtor. *See generally* Utah R. Civ. P. 64D (setting out the procedures for the issuance of a writ of garnishment). The district court issued the writ of garnishment to be served on Administrator.

¶3 Administrator moved to quash the writ, arguing it could not be enforced against Administrator, an entity of the State. Administrator maintained that the State's governmental immunity and the Governmental Immunity Act of Utah (the Immunity Act) bar the garnishment of property held by the State. The district court granted Administrator's motion to quash, concluding that Utah law does not require Administrator

---

2. On appeal, the Unclaimed Property Division, which acts under the direction of the Utah State Treasurer, refers to the relevant party as the Unclaimed Property Administrator. We adopt that nomenclature.

3. In addition to the parties' briefings in this case, we requested and received briefing from the Utah State Tax Commission, as amicus curiae.

4. This case and its companion case, *Federal Pacific Credit Co. v. Utah State Treasurer*, 2016 UT App 24, were argued together. The cases are legally and factually indistinguishable.

to comply with the writ of garnishment. Asset Acceptance appeals.

¶4    Asset Acceptance argues that Administrator must comply with the writ because governmental immunity does not apply in this situation, and, even if it did, that the Immunity Act waives any immunity Administrator might otherwise possess. Asset Acceptance also argues that its writ of garnishment is authorized by Utah Code section 78B-5-808 and the Utah Supreme Court's interpretation of a prior version of that statute in *Funk v. Utah State Tax Commission*, 839 P.2d 818 (Utah 1992).

¶5    These arguments require us to review the district court's order to determine if the court properly analyzed and applied various statutes. We review the district court's interpretation of a statute for correctness and afford no deference to the district court's decision. *DePatco, Inc. v. Teton View Golf Estates, LLC*, 2014 UT App 266, ¶ 6, 339 P.3d 126; *see also Gutierrez v. Medley*, 972 P.2d 913, 914–15 (Utah 1998).

¶6    "Sovereign immunity—the principle that the state cannot be sued in its own courts without its consent—was a well-settled principle of American common law at the time Utah became a state." *Madsen v. Borthick*, 658 P.2d 627, 629 (Utah 1983). Utah case law has long recognized that sovereign immunity generally prohibits actions against the State unless it has expressly waived its immunity. *See Wilkinson v. State*, 134 P. 626, 630 (Utah 1913) ("[I]n the absence of either express constitutional or statutory authority an action against a sovereign state cannot be maintained.").

¶7    The Utah Legislature codified the doctrine of sovereign immunity in the Immunity Act. *See Scott v. Universal Sales, Inc.*, 2015 UT 64, ¶ 55, 356 P.3d 1172 ("Prior to the enactment of [the Immunity Act] in 1965, the common law doctrine of sovereign immunity prevented a citizen from suing a state governmental entity for any act considered to be a function of government."). In defining the Immunity Act's scope, the Legislature has

provided that the Immunity Act's "waivers and retentions of immunity" apply to "all functions of government, no matter how labeled," and in a separate subsection, that the Immunity Act "governs all claims against governmental entities or against their employees or agents arising [from the employee's or agent's official capacity]." Utah Code Ann. § 63G-7-101(2)(a), (b) (LexisNexis 2014). The Immunity Act further states, "Except as may be otherwise provided in this chapter, each governmental entity and each employee of a governmental entity are immune from suit for any injury that results from the exercise of a governmental function." *Id.* § 63G-7-201(1).[5] The Immunity Act defines "governmental function" as "each activity, undertaking, or operation" of a governmental entity or employee. *Id.* § 63G-7-102(4)(a). "Governmental function" also includes "a governmental entity's failure to act." *Id*. § 63G-7-102(4)(c). The Utah Supreme Court has noted that the breadth of this definition encompasses "anything the government decides to do." *Scott*, 2015 UT 64, ¶ 58.

¶8    Thus, absent a waiver, the State's governmental immunity prohibits Asset Acceptance from seeking to judicially compel Administrator to comply with a writ of garnishment.[6] *Cf. Hall v.*

---

5. In 2015, after the district court entered the order in this case, the Utah Legislature amended this provision. It now provides, "Except as otherwise provided in this chapter, each governmental entity and each employee of a governmental entity are immune from suit for any injury that results from the exercise of a governmental function." Utah Code Ann. § 63G-7-201(1) (LexisNexis Supp. 2015). The Legislature also amended section 63G-7-101 to add subsection (3), which now provides, "A governmental entity and an employee of a governmental entity retain immunity from suit unless that immunity has been expressly waived in this chapter." *Id.* § 63G-7-101.

6. The Utah Supreme Court has recognized that "the legislature can limit how and when the state may be subject to

(continued…)

*Utah State Dep't of Corr.*, 2001 UT 34, ¶ 14, 24 P.3d 958 (holding that the Immunity Act "must be strictly applied" because "it is through the [Immunity Act] that the legislature has recognized the necessity of immunity as essential to the protection of the state in rendering the many and ever increasing number of governmental services" (citation and internal quotation marks omitted)); *Epting v. State*, 546 P.2d 242, 244 (Utah 1976) ("The decisions of this court, and other states, have indicated recognition of the principle that where there is thus a general preservation of governmental immunity, any exception must be found to be clearly stated within the provisions of the [Immunity Act]." (footnotes omitted)).[7]

---

(…continued)

garnishment." *Funk v. Utah State Tax Comm'n*, 839 P.2d 818, 821 (Utah 1992).

7. Other jurisdictions have recognized that governmental immunity prevents writs of garnishment against state or federal entities absent specific waiver of that immunity. *See, e.g., Applegate v. Applegate*, 39 F. Supp. 887, 889 (E.D. Va. 1941) ("That [an attachment or garnishment of property held by the United States] cannot be maintained without the consent of the United States to being sued has long been established."); *Doss v. Thomas*, 183 Ohio App. 3d 795, 2009-Ohio-2275, 919 N.E.2d 219, at ¶ 12 ("The general rule nationally is that the United States, the states, and their political subdivisions and agencies cannot be summoned as a garnishee in an action without clear and unequivocal statutory authorization, consent, or waiver."); *Hernando County v. Warner*, 705 So. 2d 1053, 1054 (Fla. Dist. Ct. App. 1998) ("The state and its subdivisions and agencies are immune from garnishment proceedings absent a clear and unequivocal legislative enactment to the contrary."); *see also North Sea Prods., Ltd. v. Clipper Seafoods Co.*, 595 P.2d 938 (Wash. 1979) (en banc) (analyzing tribal immunity). This is true even

(continued…)

(…continued)

where the plaintiff attempts to garnish the property of private parties held by a state or federal agency. *See, e.g., In re Pritchard*, 75 B.R. 877, 880 (Bankr. D. Minn. 1987) ("It must be acknowledged that, under the doctrine of sovereign immunity, the United States is not subject to suit as a third-party garnishee or bailee in attachment or garnishment proceedings in the absence of a statutory waiver of that immunity."); *Herzig v. Horrigan*, 644 A.2d 360, 362–63 (Conn. App. Ct. 1994) (rejecting an argument that "property execution on a state agency [to attach the property of a third party] is not the 'institution of suit' and thus is not barred by the doctrine of sovereign immunity," because Connecticut law "does not limit the application of the doctrine of sovereign immunity to suits against the state involving the state's direct pecuniary interest in the outcome"); *Meyers v. Ohio State Lottery Comm'n*, 517 N.E.2d 1029, 1033–34 (Ohio Ct. App. 1986) (holding that lottery winnings held by Ohio's State Lottery Commission but owing to a third party are generally not subject to attachment by a lottery winner's judgment creditors because, among other things, the state's sovereign immunity generally prevents it from being sued in its courts and "the legislature ha[d] not *specifically* provided that these winnings may be attached" (emphasis in original)); *Ridge Lumber Co. v. Overmont Dev.*, 366 A.2d 125, 125 (Md. Ct. Spec. App. 1976) ("[G]overnmental officers and subdivisions of the State are exempt from attachment proceedings where the money sought to be attached is held by the garnishee in its official capacity."); *Knight v. Knight*, 409 So. 2d 432, 435–36 (Ala. Civ. App. 1982) (holding that a public employee's salary held by the City of Birmingham was generally immune from garnishment under the doctrine of sovereign immunity and concluding that "the general rule . . . is only changed by statute" because "the modification of the doctrine is a legislative question, not one for the courts").

¶9    Asset Acceptance argues that not only has the State waived its governmental immunity with regard to the garnishment in this case, but that its garnishment is also authorized by the Immunity Act's general waiver of immunity in Utah Code section 63G-7-301(2)(a) for certain types of suits. Administrator counters that it is immune from Asset Acceptance's garnishment due to Utah Code section 63G-7-603's reservation of immunity from judicial actions taken through certain processes.

¶10    "Because we will not alter the meaning of a statute by judicial fiat, we must try to interpret it in accordance with the legislature's intent." *Flowell Elec. Ass'n, Inc. v. Rhodes Pump, LLC*, 2015 UT 87, ¶ 34, 361 P.3d 91. "When we are faced with two statutes that purport to cover the same subject, we seek to determine the legislature's intent as to which applies." *Jensen v. IHC Hosps., Inc.*, 944 P.2d 327, 331 (Utah 1997). In doing so, we "follow the general rules of statutory construction, which provide both that 'the best evidence of legislative intent is the plain language of the statute,'" *id.* (citation omitted), and "that when two statutory provisions conflict in their operation, the provision more specific in application governs over the more general provision," *Taghipour v. Jerez*, 2002 UT 74, ¶ 11, 52 P.3d 1252 (citation and internal quotation marks omitted).

¶11    Section 63G-7-301(2)(a) provides that immunity is waived "as to any action brought to recover, obtain possession of, or quiet title to real or personal property." Utah Code Ann. § 63G-7-301(2)(a) (LexisNexis Supp. 2015). Section 63G-7-603(2) provides, "Execution, attachment, or garnishment may not issue against a governmental entity." *Id.* § 63G-7-603(2) (2014).

¶12    Section 63G-7-603 is the more specific statute. It provides that the precise action attempted by Asset Acceptance—garnishment—may not issue against a governmental entity. *Id.* In contrast, section 63G-7-301 addresses a much broader range of potential actions, including *any* action to recover or obtain possession of personal property. *See id.* § 63G-7-301(2)(a) (Supp.

2015). Thus, section 63G-7-603 applies here, preventing the issuance of Asset Acceptance's garnishment.[8]

¶13    Moreover, Administrator's reading of the Immunity Act comports with our prior interpretation of section 63G-7-603. *See Fisher v. Fisher*, 2003 UT App 91, ¶¶ 13–14, 67 P.3d 1055. In *Fisher*, an attorney obtained a judgment for past-due child support and an award of future child support payments. *Id.* ¶ 2. His client sought the assistance of the Office of Recovery Services (ORS) to garnish her ex-husband's wages. *Id.* The attorney then filed an attorney lien on the funds ORS had collected. *Id.* ORS moved to quash the lien arguing, in part, that the Immunity Act did not permit such a lien. *See id.* ¶¶ 2, 7.

¶14    Specifically, ORS argued a prior (but identical) version of section 63G-7-603(2), which commands that "[e]xecution,

_____

8. Asset Acceptance contends that its garnishment does not fall within the reservation of immunity in section 63G-7-603 because Administrator does not own the property to be garnished and, therefore, the garnishment does not "issue against a governmental entity." *See* Utah Code Ann. § 63G-7-603(2) (LexisNexis 2014). Amicus curiae Utah State Tax Commission argues that the Immunity Act "does not specifically permit or prevent Utah from being served with a writ of garnishment to garnish funds or property belonging to a third party." Our precedent forecloses both arguments. We have previously held that a writ of garnishment served on a government agency to obtain property in the possession of, but not owned by, that government agency "issues" against that entity for purposes of section 63G-7-603. *See Fisher v. Fisher*, 2003 UT App 91, ¶¶ 13–14, 67 P.3d 1055 (holding that an attorney lien could not issue against property held by a state entity, but owing to a third party). Moreover, Asset Acceptance points to nothing in the statutory language that could be read to specifically create a waiver of immunity when a party is attempting to garnish property held but not owned by Administrator.

attachment, or garnishment may not issue against a governmental entity," precluded the lien. *Id.* ¶ 13 (alteration in original) (citation and internal quotation marks omitted). We agreed, concluding that the funds the attorney sought to attach were "in the possession and control of ORS, a governmental agency that is immune from execution, attachment, or garnishment." *Id.* ¶ 14. Asset Acceptance does not discuss *Fisher* in its briefing.[9] In the absence of argument attempting to distinguish *Fisher* and its application of the Immunity Act in similar circumstances, we conclude that *Fisher*'s reasoning applies and that section 63G-7-603(2) prohibits Asset Acceptance from garnishing the property held by Administrator.

¶15 Finally, Asset Acceptance argues that Utah Code section 78B-5-808 authorizes its garnishment in this action. The district court rejected this argument, concluding that a "common sense reading of [section 78B-5-808 shows] that the State is subject to garnishment only for money owed to a public official or employee as either salary or wages." We agree with the district court.

¶16 When interpreting a statute, "our primary goal is to evince the true intent and purpose of the Legislature." *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863

---

9. Nor has Asset Acceptance asked us to revisit *Fisher*'s holding. "[I]n accordance with horizontal stare decisis . . . [an appellate court] will overrule its own precedent in the limited circumstances where it is 'clearly convinced that the rule was originally erroneous or is no longer sound because of changing conditions and that more good than harm will come by departing from precedent.'" *State v. Tenorio*, 2007 UT App 92, ¶ 9, 156 P.3d 854 (quoting *State v. Bennett*, 2000 UT 34, ¶ 8, 999 P.2d 1). Furthermore, the party seeking a departure from precedent "carries a heavy burden of persuasion." *Ewing v. Department of Transp.*, 2010 UT App 158, ¶ 13, 235 P.3d 776. Asset Acceptance has made no effort to shoulder that burden.

(citation and internal quotation marks omitted). "The best evidence of the legislature's intent is the plain language of the statute itself." *Id.* (citation and internal quotation marks omitted). "When discerning the plain meaning of the statute, terms that are used in common, daily, nontechnical speech, should, in the absence of evidence of a contrary intent, be given the meaning which they have for laymen in such daily usage." *O'Dea v. Olea*, 2009 UT 46, ¶ 32, 217 P.3d 704 (citation and internal quotation marks omitted). Further, "[w]hen the meaning of [a] statute can be discerned from its language, no other interpretive tools are needed." *Marion Energy*, 2011 UT 50, ¶ 15 (second alteration in original) (citation and internal quotation marks omitted). A statute is ambiguous only when it is "susceptible to two or more reasonable interpretations." *Id.* "A statute is not ambiguous merely because the parties disagree about its meaning. Rather, [a] statute is ambiguous [only] if it can be understood by reasonably well-informed persons to have different meanings." *Peeples v. State*, 2004 UT App 328, ¶ 8 n.3, 100 P.3d 254 (alterations in original) (citation and internal quotation marks omitted).

¶17    Section 78B-5-808 provides,

> The state and any subdivision, agency, or institution of the state which has in its possession or under its control any credits or other personal property of, or owing any debt to, the defendant in any action, whether as salary or wages, as a public official or employee may be subject to attachment, garnishment, and execution in accordance with any rights, remedies, and procedures applicable to attachment, garnishment, and execution, respectively . . . .

Utah Code Ann. § 78B-5-808 (LexisNexis 2012).

¶18    Asset Acceptance argues that the operative language of section 78B-5-808 is its first clause, which provides for

garnishment of "any credits or other personal property of, or owing any debt to, the defendant in any action." *Id.* Based on this broad language, it contends section 78B-5-808 provides for garnishment of both public employee and nonpublic employee property held by the State.

¶19  In contrast, Administrator contends that the district court's interpretation of section 78B-5-808 is correct; it asserts that the statute "makes clear that only a public official or employee may have his property garnished." Administrator reasons that the statute's broad statement "defendant in any action" is narrowed by "as a public official or employee" and that the broad statement "any credits or other personal property" is similarly narrowed by the later phrase "whether as salary or wages." According to Administrator, when the statutory language is read as a whole, it authorizes garnishment only against the salary or wages of a public official or employee.

¶20  We agree with Administrator and the district court. The only reasonable reading of the statute requires the State to respond to garnishments only if it is holding property owed as salary or wages to a public official or employee. When distilled to its component parts, the statute provides that the State is subject to "attachment, garnishment, and execution" when it "has in its possession or under its control" certain property of, or owing to, "the defendant in any action." *See* Utah Code Ann. § 78B-5-808. And, most importantly, the statute narrows this potentially broad grant to only those situations where the property in the State's possession or control is held, "whether as salary or wages" and the defendant in the action is "a public official or employee." *See id.*

¶21  Asset Acceptance argues that the word "whether" and the words that follow it in section 78B-5-808 act only to illustrate certain descriptive examples of when a garnishment may be issued against the State. Based on this reading, Asset Acceptance argues that the statute has "broad application." We disagree. The statute's use of the word "whether" cannot reasonably be

construed to provide an illustrative example. To come to this conclusion, we would be required to determine that the Legislature used "whether" to describe a non-exhaustive list, and that "whether" in this instance is the equivalent of "including" or "includes, but is not limited to."[10] This we simply cannot do; we are not aware of any case, nor have the parties pointed us to any, where a court has interpreted "whether" to signify a non-exhaustive list of descriptive examples. Both the ordinary meaning of "whether" and the structure of section 78B-5-808 indicate that "whether" limits, rather than illustrates, the statute's prior language.[11]

¶22 Asset Acceptance's argument is further undercut by the Legislature's actions following the Utah Supreme Court's

---

10. "Including" or "includes" is a somewhat unique word in the English language, particularly with regard to its legal usage, because it has long been held to unambiguously indicate a non-exhaustive list. *See, e.g.*, *Federal Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941); *Helvering v. Morgan's Inc.*, 293 U.S. 121, 125–26 (1934); *Chickasaw Nation v. United States*, 208 F.3d 871, 878 (10th Cir. 2000).

11. Additionally, "whether" is defined as "alternative conditions or possibilities" such as "whether or not" or "whichever one of the two." Merriam-Webster, Merriam-Webster's Collegiate Dictionary 1346 (10th ed. 1999); *see also* Whether, Oxford Dictionaries, http://www.oxforddictionaries.com/us/definition/american_english/whether (last visited Jan. 13, 2016) (defining "whether" as "[i]ndicating that a statement applies whichever of the alternatives mentioned is the case" or "[e]xpressing a doubt or choice between alternatives"), *archived at* perma.cc/9CHP-6LKE. While dictionary definitions are not dispositive in our interpretation of statutes, they are "useful in cataloging a range of possible meanings that a statutory term may bear." *State v. Canton*, 2013 UT 44, ¶ 13, 308 P.3d 517 (citation and internal quotation marks omitted).

decision in *Funk v. Utah State Tax Commission*, 839 P.2d 818 (Utah 1992). In *Funk*, First Security Bank obtained a writ of garnishment directing the Utah State Tax Commission to attach Funk's state tax refund. *Id.* at 819. After the Tax Commission complied with the writ, Funk filed suit against the Tax Commission, arguing that, as a state entity, the Tax Commission was immune from the garnishment and could not comply with the writ because no specific legislation authorized its compliance. *Id.*

¶23 The *Funk* court used a prior version of Utah Code section 78B-5-808 as the starting point for its analysis. *See id.* at 820. The then-applicable version of the statute authorized garnishments against the State when the property at issue was owing to "the defendant in any action, whether as salary or wages, as a public official or employee, *or otherwise*." Utah Code Ann. § 78-27-15 (Michie 1987) (emphasis added). The supreme court held, "The 'or otherwise' language and the phrase 'the defendant in any action' indicate that the legislature intended the statute to have broad application." *Funk*, 839 P.2d at 820. The court concluded that, "[a]lthough the legislature can limit how and when the state may be subject to garnishment," the then-enacted statute authorized attachments, garnishments, and executions against both public and nonpublic employees. *Id.* at 821. It reasoned, "If the statute were intended to apply only to public employees, there would be no need to add 'or otherwise.'" *Id.* at 820. Based upon this reading of the statute, *Funk* concluded that the statute "authorizes the [Tax] Commission to comply with a writ of garnishment of a state tax refund owing to nonpublic employees." *Id*. at 821.

¶24 Following *Funk*, the Legislature removed the words "or otherwise" from the statute. *See* Title 78 Recodification and Revision, ch. 3, § 840, 2008 Utah Laws 48, 437–38; *cf.* Utah Code Ann. § 78B-5-808 (LexisNexis 2008). Thus, prior to its amendment, the statute authorized garnishments against certain property owing to "the defendant in any action, whether as salary or wages, as a public official or employee, *or otherwise*."

Utah Code Ann. § 78-27-15 (Michie 1987) (emphasis added). As amended, the statute provides for garnishments against certain property owing to "the defendant in any action, whether as salary or wages, as a public official or employee." *Id.* § 78B-5-808 (LexisNexis 2012). Through the amendment, the Legislature removed the language the *Funk* court relied upon to hold that the statute's reach extended to persons other than public employees.[12]

¶25    Additionally, while we conclude the plain language of the statute is unambiguous and thus we are not required to look beyond the plain language of the statute, we also note that the statute's title, "Salaries of public officers subject to garnishment,"

---

12. Asset Acceptance argues that the Legislature's amendment was merely a stylistic change that did not affect the supreme court's decision in *Funk*. It argues that the statute's legislative history indicates that the Legislature did not intend its removal of "or otherwise" to have any substantive effect. The amendments to section 78B-5-808 were part of the Legislature's recodification of the entire judicial code. *See* Title 78 Recodification and Revision, ch. 3, § 840, 2008 Utah Laws 48, 437–38. The house sponsor stated that the bill made "no substantial changes to law." Recording of Utah House Floor Debates, H.B. 78, 57th Leg., Gen. Sess. (Jan. 22, 2008) (statement of Rep. Jackie Biskupski), *available at* http://utahlegisla ture.granicus.com/MediaPlayer.php?clip_id=17197&meta_id=50 9722, *archived at* https://perma.cc/S9K8-WV58. As noted above, however, the Legislature's removal of "or otherwise" had a substantive effect on the statute's meaning. Asset Acceptance's argument highlights the dangers of ignoring a statute's text in favor of arguments based upon the comments of individual legislators. "We cannot properly invoke the legislative history in a manner overriding the terms of the statute. Legislative history is not law. It may be useful in informing our construction of ambiguities in the law. But its utility ends there." *Graves v. North E. Servs., Inc.*, 2015 UT 28, ¶ 64, 345 P.3d 619.

comports with our reading of the statute. *Id.* And the statute's placement by the Legislature in Title 78B of the Utah Code—the judicial code—rather than in Title 63G—the general government code—suggests that it was not meant to have the broad effect attributed to it by Asset Acceptance. Had the Legislature intended to provide a broad grant of immunity from garnishment, it likely would have included the statute in the Immunity Act, located in chapter 7 of Title 63G of the Utah Code. While we do not rely directly on either of these factors in our decision, they nonetheless bolster our conclusion.

¶26    Thus, we conclude that Asset Acceptance's writ of garnishment against Administrator is not authorized by the plain language of Utah Code section 78B-5-808. We also hold that the Legislature's amendment to that statute supplants the applicability of the supreme court's holding in *Funk* to the current version of the statute.[13]

¶27    Finally, it bears noting that, despite our ruling, the Utah Code provides Asset Acceptance with a path to obtain the

---

13. As noted above, we asked the Utah State Tax Commission to file a brief in this case as amicus curiae. *See supra* note 3. We asked the Tax Commission to weigh in on the dispute before us because, at oral argument, counsel for Asset Acceptance represented that the Tax Commission's practice was to comply with writs of garnishment, despite the Legislature's 2008 amendment to Utah Code section 78B-5-808. In its brief, the Tax Commission confirmed its practice and represented that it "does not believe it can disregard the rule established by *Funk* without clear guidance given by a Court, or an act of the legislature which unequivocally states a contrary intent." We hold today that the Legislature overrode *Funk*'s precedential authority when it amended the statute to remove the words, "or otherwise." We leave the question of whether it constitutes good policy to allow private parties to compel the Tax Commission and other state entities to process writs of garnishment to the Legislature.

property it seeks. The Unclaimed Property Act, *see* Utah Code Ann. §§ 67-4a-101 to -902 (LexisNexis 2014), provides a means for creditors to access the unclaimed property of third-party debtors. The Unclaimed Property Act provides that "the owner may receive from [Administrator] the principal amount turned over to the state." *Id.* § 67-4a-401. The Act defines "owner" as, among other things, "a creditor, claimant, or payee in the case of other intangible property." *Id.* § 67-4a-102(21)(c). Administrator therefore contends, "[A] creditor, which includes a judgment creditor like [Asset Acceptance], can simply file a claim for the debtor's unclaimed property claim. [Administrator] will satisfy the underlying unclaimed property claim . . . up to the amount of the judgment or the amount of unclaimed property claim, whichever is less."

¶28  We conclude that neither the Immunity Act nor Utah Code section 78B-5-808 waives Administrator's governmental immunity with respect to the garnishment in this action. The Legislature's 2008 amendment to Utah Code section 78B-5-808 narrowed the scope of that statute and removed the language upon which the Utah Supreme Court relied to decide *Funk v. Utah State Tax Commission*, 839 P.2d 818 (Utah 1992). *Funk*'s reasoning, therefore, no longer governs the interpretation of that statute. Accordingly, we affirm the district court's order quashing Asset Acceptance's writ of garnishment.

————————

ORME, Judge (concurring):

¶29  I concur in the lead opinion. I confess that the alternative route to the same result outlined in the other concurring opinion also rings true.

¶30  But whether affirmance is mandated by the plain language of the key statute or by judicial precedent that reflects a misreading of several statutes, this simply is not good public policy. For the life of me, I cannot see why our Legislature

would have any interest in protecting judgment debtors from making good on their just obligations. Stated the other way, I cannot see why our Legislature would want to hinder the State's citizens who hold valid judgments in their efforts to collect on those judgments. Yet that is the very upshot of the statutory scheme now in effect—at least as the statutory language has been interpreted by both of the state's appellate courts.

¶31    True, the current scheme does insulate state agencies from the modest inconvenience of preparing answers to garnishment interrogatories and, in appropriate cases, from the "trouble" of issuing and mailing a check payable to the successful garnishor. But this seems inconsequential in the face of the compelling competing interests, namely that the citizens of this State should make good on their just debts and that garnishment should be readily available as a tool in favor of judgment creditors to help make this happen.

¶32    Very simply, the State, like any other person or entity holding funds owed to a judgment debtor that ought properly be shifted to that debtor's creditor, should be required to facilitate the transfer. I hope the Legislature will immediately reconsider the current policy that instead insulates debtors from the reach of our garnishment laws as concerns those debtors' funds in the possession of the State or one of its entities, whether those funds be in the form of a public employee's salary, unclaimed accounts owned by the debtor, or a state tax refund.

_____

VOROS, Judge (concurring dubitante):

¶33    I do not read the Governmental Immunity Act as the majority opinion does. I do read *Funk v. Utah State Tax Commission*, 839 P.2d 818 (Utah 1992), as the majority does, and I agree it requires affirmance here. But I question the soundness of *Funk*.

¶34 First, as to the Governmental Immunity Act.[14] I agree with amicus Utah State Tax Commission that the Act "does not specifically permit or prevent Utah from being served with a writ of garnishment to garnish funds or property belonging to a third party." The Act states, "A governmental entity and an employee of a governmental entity retain immunity from suit unless that immunity has been expressly waived in this chapter." Utah Code Ann. § 63G-7-101(3) (LexisNexis Supp. 2015). I doubt that this reference to "suit" encompasses a

---

14. "Historically, the ability to sue the State of Utah or one of its political subdivisions rested on a determination of whether the governmental entity was protected by the common law doctrine of sovereign immunity." *Tindley v. Salt Lake City Sch. Dist.*, 2005 UT 30, ¶ 9, 116 P.3d 295. But "[t]hat changed in 1965, when the Utah Legislature enacted the Utah Governmental Immunity Act . . . ." *Id.* The Act represents "the codification of sovereign immunity," *Hall v. Utah State Dep't of Corr.*, 2001 UT 34, ¶ 14, 24 P.3d 958, and thus "establishes the law of this state respecting the subjects to which [it] relates," Utah Code Ann. § 68-3-2(2) (LexisNexis 2010). It has "significantly altered the common law of sovereign immunity, and substituted a statutory framework to be interpreted by the courts and reshaped by the Legislature as necessary from time to time." *Madsen v. Borthick*, 658 P.2d 627, 629–30 (Utah 1983). It represents a "careful balancing" of the need to protect the government from "a flood of lawsuits" on the one hand and the hardship imposed on parties injured by governmental acts on the other. *Taylor ex rel. Taylor v. Ogden City Sch. Dist.*, 927 P.2d 159, 167 (Utah 1996). Thus while the Act has in some ways "limited Utah's sovereign immunity," *Cope v. Utah Valley State Coll.*, 2014 UT 53, ¶ 16, 342 P.3d 243, it has in others "extended the scope of governmental immunity far beyond the common law doctrine of sovereign immunity," *DeBry v. Noble*, 889 P.2d 428, 434 (Utah 1995). These pronouncements suggest that the Act has wholly supplanted the common law doctrine of sovereign immunity.

garnishment seeking funds belonging to a third party—Asset Acceptance has not sued the State Treasurer. Therefore, its garnishment does not fall within the plain language of section 63G-7-101(3).

¶35    Section 63G-7-101 states that the Act's immunities and waivers "govern[] all claims against governmental entities or against their employees or agents arising out of the performance of the employee's duties, within the scope of employment, or under color of authority." *Id.* § 63G-7-101(2)(b) (emphasis added). Reasonable minds could disagree as to whether a garnishment served on the State Treasurer constitutes a "claim." But the Act does not apply to all claims, only those "arising out of the performance of the employee's duties, within the scope of employment, or under color of authority." And Asset Acceptance's garnishment does not arise out of the performance of any governmental employee's duties. So even if Asset Acceptance's garnishment did qualify as a "claim" against a governmental entity, it nevertheless does not fall within the plain language of section 63G-7-101.

¶36    I also agree with the Tax Commission that § 63G-7-603 "does not appear to apply to writs seeking third party funds." That section states, "Execution, attachment, or garnishment may not issue against a governmental entity." *Id.* § 63G-7-603(2) (2008). But we interpret statutes "in harmony with other statutes in the same chapter and related chapters." *State v. Barrett*, 2005 UT 88, ¶ 29, 127 P.3d 682 (citation and internal quotation marks omitted). And this sentence addressing garnishment appears in Part 6 of the Act, which deals with "actions" (which require an undertaking of not less than $300), judgments "against a governmental entity," and the unavailability of punitive damages against the government—in short, lawsuits against governmental entities. In this context, the statement that "garnishment may not issue against a governmental entity" most plausibly refers to the situation where the government is the judgment debtor, not the garnishee. True, our opinion in *Fisher* reads section 63G-7-603 to prevent liens against property

owned by third parties. *See Fisher v. Fisher*, 2003 UT App 91, ¶ 13, 67 P.3d 1055. But I find *Fisher* unpersuasive for the reason stated by the Tax Commission: *Fisher* "never explains how the Immunity Act could have applied to the proceedings. There was no claim arising out of a public employee's duties."

¶37 In sum, I do not agree that sections 63G-7-101(2), 63G-7-101(3), or 63G-7-603 apply to a garnishment targeting third party funds in the hands of the State. But because I read *Funk* as the majority opinion does, I vote to affirm the judgment of the district court.

¶38 That said, I doubt the soundness of *Funk*. *Funk* seems to address governmental immunity, but in fact applies section 78B-5-808. *See Funk v. Utah State Tax Comm'n*, 839 P.2d 818, 820 (Utah 1992). That section does nothing more than make "salaries of public officers subject to garnishment"—that is in fact the title of the section. The section resides in the Judicial Code, far from the Governmental Immunity Act, in a chapter titled "Procedure and Evidence" and a part titled "Miscellaneous." It does not purport to be a waiver of governmental immunity; indeed, nothing in Part 8 seems to address governmental immunity. The sections surrounding section 808 address tender, money deposited in court, bonds, payment of costs by the State and counties, service of process, sureties on stay bonds, depositions, releases, and comparative negligence.

¶39 So while we read *Funk* as an interpretation of the limits of governmental immunity, really it interprets a statute with no apparent connection to governmental immunity. Nor does *Funk* ever cite the Governmental Immunity Act. It refers to governmental immunity only twice; both references describe the allegations of the complaint filed in that case. And in that case, as in this one, the Tax Commission took the position that nothing in the Utah Code prevented the State from releasing third party funds to judgment creditors pursuant to writs of garnishment.

*See Funk*, 839 P.2d at 820.[15] Without analyzing whether such a garnishment qualified as a claim against the government and without citing any legal prohibition against the release of such funds, the *Funk* court read a negative pregnant into the statute affirmatively authorizing garnishment of money owed to governmental employees "or otherwise." *See id.* at 820–21. It held that but for the phrase "or otherwise," the law—precisely what law remained unstated—would prevent the garnishment at issue there. But notwithstanding its shaky analytical foundation, that holding binds this court. And it requires affirmance here.

¶40    Affirming this judgment will have significant real world implications. I agree with Judge Orme that, whatever its source, the policy we are constrained to implement in this case makes little sense. As Judge Orme notes in his concurring opinion, today's holding protects "judgment debtors from making good on their just obligations." *Supra* ¶ 30. And today's decision may extend that protection to thousands of such judgment debtors. Based on its reading of *Funk*—which we today reject—the Tax Commission routinely processes the very type of garnishments the State Treasurer here resists. In the past three fiscal years, the Tax Commission has received and responded to a total of 10,729 writs, resulting in 2,651 refunds garnished to the tune of $1,249,635. Today's opinion will, I fear, end that practice.

─────────

15. Although the Utah State Tax Commission appears as amicus here by invitation of the court, in *Funk* it was the appellee.